## Case No. 17,451.

### WESTLAKE v. CARTTER et al.

[6 Fish. Pat. Cas. 519; [1] 4 O. G. 636.]

Circuit Court, E. D. Missouri.   Oct. 11, 1873.

PATENT SUITS — NOTICES OF SPECIAL DEFENSES — FILE-WRAPPER AS EVIDENCE — QUESTIONS FOR JURY—SUFFICIENCY OF SPECIFICATIONS—UTILITY —NOVELTY — INFRINGEMENT — COMBINATIONS — DAMAGES AND PROFITS.

1. The thirty days' notice of special matter of defense in an action for infringement of a patent, required by law, is thirty days prior to the beginning of the term of trial.

2. Such notice need not specify the particular portion of the patent to which it is designed to apply.

3. Patents may be given in evidence to show the state of the art without notice, but printed publications can not.

4. The file-wrapper and contents, in the matter of the application for the patent sued upon, is not admissible evidence for the purpose of limiting the construction of the patent.

5. The first question for the jury is, whether the description and specification of the patent are in such full, clear, and exact terms as to enable one skilled in the art to construct the thing patented.

6. The second question for the jury is, whether the patent is void for want of usefulness.

1 [Reported by Samuel S. Fisher. Esq., and here reprinted by permission.]

7. If the invention is not frivolous or prejudicial to the public, and has any degree of usefulness, no matter how slight, it is not void for want of utility.

8. The third question for the jury is that of novelty.

9. The patent having been duly issued, is presumed to be valid, and whoever assails it must show by competent evidence that it is void.

10. The first, third, and sixth claims of complainant's patent construed by the court.

11. Whoever adopts the patentee's plan, and works out the same result, by merely substituting for one or more mechanical devices their mechanical equivalents, is just as guilty of an infringement as if he servilely copied the patentee's device in all its parts.

12. The action of official experts at the patent office in granting defendants' patent is entitled to some consideration, as indicating their opinion that it was for a different invention from complainant's.

13. Where a combination is claimed, the patentee can not abandon part of said combination and maintain a claim to the residue, nor prove any part thereof immaterial or useless without destroying the whole.

14. A patent for a combination does not rest upon the novelty of the parts, but upon the novelty of the mode of combining the parts.

15. Where the patentee gave his consent to the manufacture of some of the alleged infringements by defendants, he can recover no damages for these; for those afterwards manufactured he is entitled to manufacturer's profits.
[Cited in Bigelow Carpet Co. v. Dobson, 10 Fed. 387.]

Action at law.

Suit brought upon letters patent [No. 30,-577] for "Improvements in truss-bridges." granted Jonathan L. Jones, November 6, 1860, and assigned to plaintiff [James V. Westlake]. The defendants [M. S. Cartter and others] plead the general issue, and gave notice of special matter of defense. Defendants' counsel offered in evidence patent granted Geo. S. Avery, July 28, 1857, No. 17,864, to which plaintiff's counsel objected, "on the ground that the particular portion of the plaintiff's patent it referred to was not specified in the notice." The notice was as follows: "The said defendants will further prove, upon said trial in bar of said action, that the plaintiff's assignor was not the first and original inventor of the invention described and claimed in said letters patent No. 30,577; but that long prior to said pretended invention, the same was fully described and shown in the following letters patent—to wit, letters patent of the United States, No. 17,864, granted Geo. S. Avery, July 28, 1857, for 'improvement in segmental truss for bridges.'"

THE COURT overruled the objection, holding the notice sufficient.

Plaintiff's Counsel. Now, I ask the court to take these patent papers (the Avery patent) and look at them, and see whether they have any bearing on this invention (the Jones patent.)

TREAT, District Judge. You have chosen

to make this a jury case, and it must go there. When you chose to have a jury, you chose to have this question determined in the light of expert testimony, and the jury will have to ascertain, from what the experts say in regard to it, what the facts are. I can not take it away from them. If I were sitting as a chancellor, then I would pass my judgment individually on them; but as I am not doing that, and you chose to have a jury, the jury will have to pass upon all these things. I can not say whether they are alike or not, or what light they would throw on it. The experts will have to do that. It is for the court to construe the patent under consideration here; but as far as any questions of fact are to be determined in the light of expert testimony, the jury are the judges of that. Consequently, we call in those who are skilled in this department to enlighten the jury in the one case or a chancellor in the other. There are two patents presented, and they require a large amount of mechanical skill outside of pure propositions of law, and this has to be obtained from this source—the experts.

Defendants' counsel offered in evidence the patent granted Wm. Howe, August 28, 1846, numbered 4,726, for "improvement in bridges," being the same set up in his third notice of special matter, of which a copy has been filed and served on the plaintiff's counsel on August 25, 1873, to which plaintiff's counsel objected as not having been filed within thirty days of the first day of the term. THE COURT sustained the objection, holding that, as in the Eighth circuit, the first day of the term was the "day of trial," the notice must be filed thirty days before the first day of the term, in order to be available. The first day of the term was September 15th, but the trial of the case did not begin till the 7th day of October. Defendants' counsel then offered the same patent in evidence, for the purpose of showing the state of the art.

Plaintiff's counsel objected "that the patent could not be put in evidence for any purpose without notice; and, if it went in at all, it should go in merely to show priority of invention.

TREAT, District Judge. I will only admit it to show the state of the art at the time of its date, not to impeach the validity of the plaintiff's patent.

Defendants' counsel then offered in evidence under the same notice a reference to "Mahan's Civil Engineering," which, being ruled out, was then offered as showing the state of the art. THE COURT refused to admit it, holding that a scientific work could not be received for such purpose.

Defendants' counsel offered in evidence certified copy, file-wrapper, and contents of plaintiff's patent, "for the purpose of showing that when the application was orig-

inally presented the plaintiff's assignor endeavored to cover flat or square heads on the chord-bars; that such claim was rejected, and subsequently amended by withdrawing all claim to flat or square heads, and leaving only a claim for the curved heads, as showing what was really patented, and what was the agreement, as it were, between the applicant and the government as to the extent of his patent."

Plaintiff's counsel objected, and the objection was sustained, THE COURT holding that the correspondence was not admissible.

Defendants' counsel was allowed, against the objection of plaintiff's counsel, to put in evidence letters patent Nos. 104,110 and 127,564, dated, respectively, June 14, 1870, and June 4, 1872, granted defendants for "improvements in truss-bridges."

The claims relied upon are quoted in the charge of the court.

M. Kinealy, for complainant.
Samuel S. Boyd, for defendants.

TREAT, District Judge (charging jury). This is a suit by plaintiff, as assignee of patent No. 30,577, dated November 6, 1860, to recover of defendants damages for the alleged infringement by them of said patent. The issues raised by the pleadings and notices filed are, as touching the validity of said patent:

First. Are the descriptions and specifications in said patent in such full, clear, and exact terms as to enable one skilled in the art of bridge-building to construct a bridge according to said alleged invention, with the aid of the drawings attached? or, on the other hand, are they so indefinite, uncertain, and ambiguous as not to enable a person so skilled to construct a bridge in accordance with the plan of the patentee? This principle rests on the doctrine that, while the inventive genius of the patentee is to be rewarded by a monopoly for a term of years, the public is to be compensated for such monopoly by having, after its expiration, the free and unrestricted use thereof, which free and unrestricted use can not be enjoyed unless the description of the invention is sufficiently clear and exact to enable those skilled in the art to construct the same. On this point, under the testimony, it is supposed you will have very little difficulty, if any. If the description is not so uncertain, indefinite, and ambiguous in its terms (which the defendant must prove), then the patent is not invalid for the first cause assigned.

Second. Is the patent void for lack of usefulness? If the invention is not frivolous or prejudicial to the public, and has any degree of usefulness—no matter how slight the practical utility—then, within the meaning of the law, it is useful, and consequently not void for lack of utility.

Third. Is there want of novelty in the invention? Under this branch of the inquiry,

your attention is confined to the devices of the Whipple patent, No. 2,064, April 24, 1841; of the Avery patent, No. 17,864, July 28, 1857; of the Osborne patent, issued in England, No. 11,501, December 21, 1846; and of the description of the Stephenson iron bridge, in Appleton's Engineers' Journal (No. 10, vol. 2, October 1, 1852), as received in evidence. The defendants can assail the Jones patent for want of novelty only on the grounds that some one or more of those patents or published descriptions had, prior to its date, covered the same ground. Under the law of the United States governing this matter—so that the patentee may not be taken by surprise—the defendant, if he wishes to assail the validity of the patent on the ground of lack of novelty, must specify precisely what patent or published description covered the ground of this alleged invention, so that he may have his attention specifically attracted at the time of the trial to the allegation as made; otherwise the patentee may come into court and have to meet anything likely to come from any book or the world at large concerning particular inventions. Hence these instructions confine you, as the law does, to those patents of which he gave notice, which he insisted already covered the ground occupied by the patentee. In this list no others come before you except the Howe patent.

I may state the plaintiff's patent can not be assailed from any supposed imitation of that. That is introduced as a mere illustration, that the jury may see the condition of the art of bridge-building at that time. Whether plaintiff's patent covers any ground occupied by that is immaterial.

The foregoing inquiries appertain to the validity of the Jones patent. That patent, having been duly issued, is presumed to be valid, and whoever assails it must show, by competent evidence, that it is void for some of the reasons alleged. If the defendants have not so done in this case, then the jury should consider it valid, and proceed to the next inquiry—viz., whether the defendants have been guilty of an infringement of it? If, on the other hand, the jury find it invalid under the evidence for any one of the three reasons mentioned, no further inquiry on their part will be necessary, and they will find for the defendants.

It is essential to the inquiries under the foregoing heads, and also to the question of infringement, that it should first appear distinctly what the Jones patent covers. The specifications and claims, there being no separation of the new from the old, as generally appears in a specification, call for a construction by the court. There are six distinct claims in this patent, each of which is patented. The plaintiff states to the court, however, that he does not rely on any other than the first, third, and sixth. Although the court, in order to ascertain what is embraced in the specified claims said to

be infringed, must look to all the claims and the whole specifications in order to ascertain what is specifically patented in the first, third, and sixth, the attention of the jury under the evidence should be limited to what is embraced in these three claims as defined by the court. The first claim is for the "flexile curved splice in the lower chord, when said splice is formed of broad flat plates, with lateral curved offsets or lugs formed on their ends, said offsets pulling against one another, and allowing a free and independent movement of each plate in the path of a vertical circle, substantially as set forth in the drawings and specifications."

This is not a patent under this claim for the splicing of broad flat plates, with lateral offsets or lugs formed on their ends irrespective of their construction or intended functions. The object sought by the patentee was to secure such splicing by means of the indicated curving, so that the same may be flexile, to allow a free and independent movement in the path of a vertical circle. That first claim is not for any mode of interlocking by the use of lateral offsets or lugs other than this, which should be so curved as to allow a free and independent movement of the plates, as mentioned. The patent is not designed to cover any other device than that thus restricted—namely, "the flexile curved splice, allowing a free and independent movement in the path of a vertical circle." In other words, gentlemen, this contrivance of interlocking by offsets and lugs at the head is not what is patented. There is no claim in the patent for that as a specific thing; but it is in the curved flexile mode of splicing to secure this free and independent movement, so that when one of the plates moves it shall not necessarily move the other. That is the particular device patented in that connection.

The third claim is for "the metallic clamps or recessed blocks for retaining and holding together the tension-joints of the upper and lower chords or stringers, in the manner and for the purposes set forth." It is obvious where several stringers are used to constitute the upper or lower chord, and are to be spliced at intervals, especially if the splicing is to be effected by interlocking with lateral offsets or lugs, it is important to have some mechanical contrivance to prevent a lateral and longitudinal displacement, whether caused by a change of temperature, loading the bridge, or from any other cause. This patent covers a specified device for that purpose—namely, recessed blocks, which served these and other supposed beneficial purposes, as sufficiently described by the testimony. That special device has its marked peculiarities. These are upper and lower blocks to be fitted together, each to be recessed, flared from the center outward, so that, in connection with the curved surfaces of the upper part of the upper block and the curved termination of the braces resting thereon, the bridge structure may, in its different parts, adjust itself automatically, as it were, to the various changes of camber.

The sixth claim is to the shoe at the abutment, "as constructed and combined with the lower ends of the tubular diagonal brace and the extreme ends of the lower chord, substantially as and for the purpose set forth." This is a claim not for the specified parts of the combination separately, but for the combination itself. It is composed of three elements, viz., the shoe, diagonal brace, and extreme ends of the lower chords passing through the shoe, each to be constructed as set forth, and all combined in the manner indicated, so as to work out a given result. There is no infringement of the sixth claim, if the shoe is not the same, or the brace, or the ends of the lower chords passing through the shoe, for some, if not all, of these were covered, in whole or part, in combinations with other devices, by other claims in the patent.

This sixth claim covers a combination of mechanical contrivances or devices to produce a given effect, and the question is, did the defendants infringe that combination?—not, was any one of the many devices in the combination used? In determining the several questions of infringement, the jury must not judge about mere similarities or differences by the names of things, but must look to the whole structure and its several devices or elements in the light of what office or function they perform, and how they perform it, and find that a thing is substantially the same as another, if it performs substantially the same functions or office, in the same way, to attain the same result; but the devices are substantially different if they perform different duties or in a different way, or produce a different result. The substantial equivalent of a device is the same as the device itself—that is, if the patent mentions a specified mode of effecting a prescribed result, the substitution of any one or more mechanical equivalents for those specially mentioned will none the less work an infringement. The object sought by the modes of effecting the same, substantially as stated in the patentee's specifications, is covered by the patent, and whoever adopts the patentee's plan and works out the same result by merely substituting for one or more mechanical devices their mechanical equivalents or devices, is just as guilty of an infringement as if he servilely copied the patentee's device in all its parts. Hence, if the Jones patent is valid, and defendants have adopted his plan for accomplishing the result he sought, and also the mechanical devices he contrived therefor, or their equivalent, they are guilty of an infringement. If, on the other hand, the result sought by the defendants was different, or if they sought the same result by an entirely different device, or one that is

not the same or equivalent, as in the patent, then they have not infringed.

The jury will bear in mind that plaintiff insists that defendants have infringed the first, third, and sixth claims; consequently, if they infringed any one of said three claims, they are guilty, and damages should be assessed accordingly. The fact that the defendants have had granted to them patents since the issue of the Jones patent, the jury have a right to consider and weigh. The issue of a patent follows the decision of official experts specially appointed and qualified to examine and pass on the claimed invention for which the patent is sought; hence, plaintiff's patent is, prima facie, valid. But the same official experts have also granted defendants' patent, thereby expressing their opinion that the latter did not interfere with the former. Their opinion, however, is not conclusive. The plaintiff has a right to rely on the presumption springing from his older patent, and it is for the jury to decide, in the light of the testimony produced on the trial, whether that presumption as to validity has been overthrown, and also whether defendants' patent interfered or infringed on plaintiff's patent. In doing so, they can take into consideration the fact of the issue of defendants' patent; so, if there be doubt or difficulty in reaching a conclusion, they may have the benefit of such official expression.

Of course, a valid patent can not be overthrown by the issue of a subsequent patent to another person for the same thing; but when the question of infringement is under consideration, and expert testimony is necessary, the action of official experts on the subject is entitled to some consideration, especially where doubt exists.

The jury should bear in mind that the object sought by plaintiff in his patent, was the adjustability of the various parts of the bridge structure on his plan, by means of flexile curved splices and convex and concave surfaces, respectively, of the top angle-block, bridge-seats, and brace-ends. Where a combination is claimed, the patentee can not abandon part of said combination and maintain a claim to the residue, nor prove any part thereof immaterial or useless without destroying the whole. For the combination is an entirety, and if one of the elements is given up, the combination disappears. From what has been said, the jury will understand that several propositions are to be considered. As to the validity of the Jones patent, on the ground of novelty, let it be borne in mind that it is not necessary that a patent for a combination should rest on novelty of parts or elements combined, but on novelty of the mode of combining the parts.

As to the infringement, the main points are: What is the Jones patent? and next, did defendants use any of the three plans named as new in the first, third, and sixth claims thereof? As to some of the first bridges built by defendants, the jury should consider the

testimony presented, viz., that the plaintiff gave his consent thereto or sold some of the parts thereof. As to those to which he gave his consent, no damages can be recovered; as to the others, if any, he is to receive manufacturer's profits thereon.

The jury found for the defendants.