GOSS PRINTING–PRESS CO. v. SCOTT.

(Circuit Court, D. New Jersey. August 4, 1900.)

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.
    To render a combination of old elements patentable, it must produce a new and useful result, or an old result in a new and useful manner; and furthermore the conception and embodiment of the combination must involve the exercise of the inventive faculty, and not merely the skill of a mechanic familiar with the art.

2. SAME—EVIDENCE OF NOVELTY—EXTENSIVE USE.
    . The fact of the popularity and extensive use of a patented mechanism is entitled to consideration on the question of invention only when that question is in doubt on the other evidence. It cannot sustain a patent for an alleged invention which is clearly without patentable novelty.

3. SAME—INVENTION—DUPLICATION OF PARTS.
    Invention cannot be predicated of the mere duplication or multiplication of well-known mechanisms.

4. SAME—PRINTING MACHINES.
    The Firm patents, No. 410,271, claim 6, No. 415,321, claim 7, and No. 529,680, claims 11, 12, and 13, all of which relate to improvements in printing machines, are void for lack of patentable novelty in view of the prior art.

In Equity. Suit for infringement of patents. On final hearing.

L. L. Bond, M. B. Philipp, and C. E. Pickard, for complainant.

B. F. Lee and W. H. L. Lee, for defendant.

BRADFORD, District Judge. The bill in this case charges infringement of certain letters patent of the United States relating to multi-roll printing presses, being Nos. 410,271 and 415,321 dated respectively September 3, 1889, and November 19, 1889, issued to Joseph L. Firm, and also No. 529,680 dated November 20, 1894, issued to Joseph L. Firm, assignor to the complainant. Patent No. 410,271 is for an improvement in "Rotary Printing-Machines," the application therefor having been filed October 27, 1888. Patent No. 415,321 is also for an improvement in "Rotary Printing-Machines," the application therefor having been filed January 17, 1888. Patent No. 529,-680 is for an improvement in "Printing Machines," the application

therefor having been filed November 9, 1889, and renewed September 1, 1893. The complainant, the Goss Printing Press Company, claims title to these several patents as follows: As to patent No. 410,271, by an assignment by Firm to the Firm Printing Press Company September 7, 1889, an assignment by that company to Firm July 24, 1891, and an assignment by Firm to the complainant January 30, 1892; as to patent No. 415,321, by an assignment by Firm to the Firm Printing Press Company November 22, 1889, an assignment by that company to Firm July 24, 1891, and an assignment by Firm to the complainant January 30, 1892; and as to patent No. 529,680, by the original grant thereof to the complainant by virtue of an assignment by Firm before the patent was issued. The charge of infringement has been restricted to claim 6 of patent No. 410,271, claim 7 of patent No. 415,321, and claims 11, 12 and 13 of patent No. 529,680. Claim 6 of patent No. 410,271 is as follows:

"(6) In combination, the form and impression cylinders adapted for printing a plurality of webs, the rollers by which said webs are collected one upon another, the rollers by which said collected webs are folded longitudinally, and a knife by which the same are severed transversely, the said folding-rollers and transversely-severing knife being located at right angles with the printing-rollers, whereby the webs, having been printed and collected, make only one change in the direction of feed while being printed, folded, and cut, substantially as described."

Claim 7 of patent No. 415,321 is as follows:

"(7) In a rotary printing-machine in which the several pages of a book or newspaper are printed upon a plurality of webs, in combination, the impression-cylinders, the form-cylinders, page-forms, the rolls whereby the webs after being printed are guided into position on top of one another, and cutters by which said webs are severed transversely between the succeeding rows of pages, the page-forms being arranged upon the several form-cylinders with their heads pointing all in the same direction around the cylinder, the forms for those pages to constitute the first half of the book being located upon corresponding zones of the various form-cylinders and the forms for those pages to constitute the last half of the book being arranged upon other corresponding zones on the various cylinders side by side with the zones in which the forms for the pages of the first half of the book are located, whereby when the webs are run out over one another without turning or reversing the several pages belonging to the first half of the book will arrange themselves above each other and the several pages belonging to the last half of the book will arrange themselves above each other side by side with those belonging to the first half, substantially as described."

Claims 11, 12 and 13 of patent No. 529,680 are as follows:

"(11) In combination, a web printing mechanism adapted to perfect a web containing four pages abreast, a guide f substantially parallel with the cylinders of said printing mechanism, two pairs of longitudinally folding rollers substantially at right angles with guide f, one pair being arranged in the path of each division of the split web, means for guiding the web to said folding rollers, transversely cutting mechanism substantially parallel with said folding rollers, guides substantially parallel with said folding rollers whereby one folded strip is brought over the other folded strip and mechanism whereby the cuts are folded together; whereby the web may be split, then each half folded longitudinally, then cut transversely, and brought together, then folded together, while moving substantially parallel with one plane before longitudinal folding and parallel with a plane substantially at right angles therewith after longitudinal folding, substantially as described.

(12) A web printing mechanism adapted to perfect a web containing four pages abreast, a guide f substantially parallel with the cylinders of said

printing mechanism, two pairs of longitudinally folding rollers substantially at right angles with guide f, one pair being arranged in the path of each division of the split web, means for guiding the web to said folding rollers, transversely perforating mechanism substantially parallel with said folding rollers, guides substantially parallel with said folding rollers whereby one folded strip is brought over the other folded strip, retarding mechanism whereby the strips are torn apart on the transverse perforations and mechanisms whereby the cuts are folded together, substantially as described, whereby the two halves of the web may be folded longitudinally, perforated transversely, and brought together and torn apart, then folded together, while moving substantially parallel with one plane before longitudinal folding and parallel with a plane substantially at right angles therewith after longitudinal folding, substantially as described.

(13) In combination a web printing mechanism adapted to perfect a web containing a plurality of pages abreast, longitudinally splitting mechanism, a plurality of frames for folding longitudinally, a folding roll at the apex of each frame, guides whereby the paper from one frame is caused to travel in the same direction with and associated with the paper coming from the other frame and mechanism whereby said associated papers are folded inside of each other, substantially as described; whereby the two parts of said web receive their primary fold separately and their final fold inside of each other."

The answer sets up among other defences lack of title in the complainant. The defendant claims that the complainant has not title, legal or equitable, to either of the patents Nos. 410,271 and 415,321, and as to patent No. 529,680 has, not an equitable, but only a legal title. Assuming for the present that the objection of want of title is not well taken, the case will now be considered on other grounds. Patents Nos. 415,321 and 410,271 relate to the class of rotary printing machines commonly known as "straight line" or "straight run" printing presses, in which the plates or page forms are so imposed on the form or type cylinders that the column rules of the printed matter are parallel to the edges of the webs or strips of web, as the case may be, and such webs or strips of web while running between, over and under the form and impression cylinders and rollers in the printing press proper and until they have been associated in register, move in the same vertical plane without lateral turning or deflection. The defendant contends, among other things, that in view of the prior art the combinations covered by claim 7 of patent No. 415,321, and claim 6 of patent No. 410,271, respectively, were not patentable, and were in fact anticipated. The complainant assigns as the date of Firm's invention of the combinations now under consideration the early part of 1878 or, at the latest, February 19, 1879. On the question of date of invention there is much evidence, not altogether satisfactory when taken as a whole. The defendant claims that no date of invention can be assigned earlier than the dates of making application for the two earlier patents in suit. Claim 7 of patent No. 415,321, covers, in a rotary printing machine in which the several pages of a book or newspaper are printed upon a plurality of webs, a combination of, (1) impression-cylinders, (2) form-cylinders, (3) page-forms thereon for such book or newspaper arranged with their heads all pointing in the same direction around their cylinders, (4) rolls whereby the webs after being printed are without turning or reversing guided into position on top of one another, and (5) cutters by which the webs are severed transversely between the succeeding rows of

pages; whereby, the page-forms having been located on the form-cylinders as stated in the claim, "when the webs are run out over one another without turning or reversing the several pages belonging to the first half of the book will arrange themselves above each other and the several pages belonging to the last half of the book will arrange themselves above each other side by side with those belonging to the first half." Claim 6 of patent No. 410,271 covers a combination of (1) form and impression-cylinders adapted to print a plurality of webs, (2) rollers by which the webs are collected one upon another, (3) rollers at right angles with the printing rollers by which the collected webs are folded longitudinally, and (4) a knife at right angles with the printing-rollers by which the collected and longitudinally folded webs are transversely severed; "whereby the webs, having been printed and collected, make only one change in the direction of feed while being printed, folded and cut." The drawings and description of each of the patents Nos. 415,321 and 410,271 disclose a double width web perfecting press using three rolls of web and a corresponding number of printing mechanisms with a slitter in the center designed to split the webs longitudinally into two strips or halves as the webs run through the machine, and with folding and delivery mechanism. Each of the three printing mechanisms is adapted to print on both sides of the web coming from its roll and includes, among other things, two pairs of cylinders, each pair consisting of a form or type-cylinder and an impression-cylinder. Each form-cylinder being of double width is adapted to receive on each semi-circumference four plates or page-forms abreast, the column rules being at right angles with the axis of the cylinder and extending circumferentially around it and parallel to the edges of the web or strip of web. There being two form-cylinders in each printing mechanism included in the press, each such mechanism has a maximum capacity of printing at each complete revolution of the cylinders sixteen pages or eight leaves. With three rolls and their respective printing mechanisms, the maximum capacity of the entire press is forty-eight pages or twenty-four leaves at each such revolution. Each of the three double width printing mechanisms included in the machine covered by patent No. 415,321, or by patent No. 410,271, is provided with its web roll, and is in its principle of construction and operation the same as either of the other two, save for the variation in the paging and typographical matter of the stereotype page plates arranged on the different form-cylinders. In neither of the multi-roll presses covered by the two earlier patents in suit is there any cross-association of webs or halves or strips of web, as there may be in the printing machines shown in patent No. 529,680. In neither of them, where association of webs or strips of web occurs, is any web or strip of web deflected laterally until after association. A vertical plane bisecting the several form and impression-cylinders is in line with the central margin of the four-page wide web and with the slitter. On each side of this line there can at most be only two pages abreast. The half of the press dealing with the strip or strips of web on the right of the central longitudinal line has no functional relation to the other half of the press dealing with the strip or strips of web on

the left of that line. Each half of the machine has a complete printing, folding and delivery mechanism and acts at all times independently of the other. The products of the two halves of the machine do not form component parts of the same newspaper. Each half prints, folds and delivers its product unaided by the other half. One half of the machine may be used to print, fold and deliver a complete newspaper, and the other half to print, fold and deliver a different and complete publication, or each half may print, fold and deliver a mere duplicate of the newspaper or other publication coming from the other half. Each press is the exact mechanical equivalent of two single width printing machines, fed from three rolls, placed side by side, each having a complete printing, folding and delivery mechanism. And so in each of the three printing mechanisms included in a press covered by either one or other of the two earlier patents one half or side of the mechanism does not in any manner co-act or co-operate with the other half or side to produce any joint result, but acts independently of the other. In printing the web each of the three printing mechanisms included in the press is the mechanical equivalent of two "straight line" single width rotary printing presses placed side by side, each fed from its own roll of web. One half or side of the complete press is merely a mechanical duplication of the other half or side and one half or side of any one of the three printing mechanisms included in the press is also a mere mechanical duplication of the other half or side. And so far as printing the web is concerned, the three printing mechanisms are but a mechanical triplication of any one of them. Patent No. 529,680 also relates to a "straight-line" rotary printing press. The defendant contends that in view of the prior art the combinations covered by claims 11, 12 and 13 respectively were not patentable. The complainant assigns as the date of Firm's alleged invention of the combinations covered by the last named claims the earlier part of 1885. The defendant claims that no date of invention can be assigned earlier than the date of the application for the patent. Claim 13, which is broader than either claim 11 or claim 12, covers a combination of (1) a web printing mechanism adapted to perfect a web containing a plurality of pages abreast, (2) longitudinal splitting mechanism, (3) a plurality of frames for folding longitudinally, (4) a folding roll at the apex of each frame, (5) guides whereby the paper from one frame is caused to travel in the same direction and associate with the paper coming from the other frame, and (6) mechanism whereby the associated papers are folded inside of each other; "whereby the two parts of said web receive their primary fold separately and their final fold inside of each other." Claim 11 covers a combination of (1) a web printing mechanism adapted to perfect a web containing four pages abreast, (2) the guide f, substantially parallel with the cylinders of the printing mechanism, (3) two pairs of longitudinally folding rollers substantially at right angles with the guide f, one pair being arranged in the path of each division of the split web, (4) means for guiding the web to the folding rollers, (5) transversely cutting mechanism substantially parallel with the folding rollers, (6) guides substantially parallel with the folding rollers whereby one folded strip is brought over the other

folded strip, and (7) mechanism whereby the cuts are folded together; "whereby the web may be split, then one half folded longitudinally, then cut transversely and brought together, then folded together while moving substantially parallel with one plane before longitudinal folding and parallel with a plane substantially at right angles therewith after longitudinal folding." Claim 12 covers a combination of (1) a web printing mechanism adapted to perfect a web containing four pages abreast, (2) the guide f, substantially parallel with the cylinders of the printing mechanism, (3) two pairs of longitudinally folding rollers substantially at right angles with the guide f, one pair being arranged in the path of each division of the split web, (4) means for guiding the web to the folding rollers, (5) transversely perforating mechanism substantially parallel with the folding rollers, (6) guides substantially parallel with the folding rollers whereby one folded strip is brought over the other folded strip, (7) retarding mechanism whereby the strips are torn apart on the transverse perforations, and (8) mechanism whereby the cuts are folded together; "whereby the two halves of the web may be folded longitudinally, perforated transversely and brought together and torn apart, then folded together, while moving substantially parallel with one plane before longitudinal folding and parallel with a plane substantially at right angles therewith after longitudinal folding." In the description Firm says:

"This invention relates to improvements on the letters patent issued to me September 3, 1889, No. 410,271. In said patent is described a printing machine in which a plurality of webs after being printed upon are split longitudinally and severed transversely between the pages and all conducted to one double folding device located at right angles with the printing machine proper. In my present machine, I employ three double folding devices and various improvements in the details of construction by which I am enabled to facilitate the work and to increase the capacity of the machine so far as the range of page combination is concerned."

The drawings and description of patent No. 529,680 disclose a double width web perfecting press using three rolls of web and a corresponding number of printing mechanisms with a slitter in the center for splitting the webs longitudinally in the middle while running through the machine, and with folding and delivery mechanism. The maximum page capacity for each complete revolution of the cylinder is the same as in printing machines covered by patent No. 415,321, or patent No. 410,271. The distinctive feature of the later printing machine as compared with the two earlier is its adaptation to cross-associate the perfected strips of web, if so desired, and thereby increase "the range of page combination." The three double feeding devices are substantially similar to each other. Firm says in the description:

"A description of one folder, B, will suffice for all. * * * Since now the two halves of each folder are alike, a further description of one half will suffice for an understanding of both."

The three double width printing mechanisms in the printing press proper are substantially the same as the corresponding mechanism in the presses covered by patents Nos. 415,321 and 410,271, respectively. Each side of the complete press has its own folding and delivery mechanism and, as in the two earlier presses, prints, folds and

delivers its own product independently of the other side of the press, except when the cross-associating mechanism is brought into operation. By means of the later mechanism the perfected web or strips of web produced on one side of the machine can be transferred to and associated with the product of the other side of the machine, and the two can then be folded into each other and form one product. This is the only instance where in any of the presses covered by any of the patents in suit one half or side of a double width machine co-operates with the other half or side for any purpose. Aside from the feature of cross-association, when it occurs, the same remarks touching duplication and triplication of parts, are applicable to the printing press covered by patent No. 529,680 as were applied to the presses covered by the other two patents in suit respectively. Careful examination of the evidence has failed to show that any one of the press combinations alleged to have been infringed was anticipated. The Nichols provisional specifications filed in the British patent office July 14, 1870, and January 12, 1871, while strongly suggestive of the combinations of claim 7 of patent No. 415,321, and claim 6 of patent No. 410,271, cannot be held to have anticipated them, whatever may have been the effect of those specifications on the state of the prior art. But on full consideration of the case I am satisfied that the devising of the combinations of mechanism represented by the several claims alleged to have been infringed did not, in view of the prior art, involve patentable novelty or invention. Every element included in the combination of claim 7 of patent No. 415,321 and in that of claim 6 of patent No. 410,271, was before the date of invention assigned by the complainant, namely, 1878, well known and used in the prior art. Every element included in the combinations of claims 11, 12 and 13 of patent No. 529,680, with the exception of the retarding mechanism mentioned in claim 12, was also prior to the date of invention assigned by the complainant, namely, 1885, well known and used in the prior art. If claim 12 could be sustained at all it would be necessary, in view of the prior art, to give it such a narrow construction as to limit it to the mechanism shown and described in the drawings and description and specifically claimed, thereby avoiding the charge of infringement. Among the old and well known devices and mechanism used in rotary printing machines prior to 1878 were form and impression-cylinders, rollers for collecting webs one upon another, folding rollers adapted to make a longitudinal fold, cutting and perforating cylinders or rollers adapted to sever transversely a web or strip of web between succeeding rows of pages, breaking rollers adapted to tear apart printed sheets along the line of perforations, page forms with their heads pointing around the form-cylinder, rolls and other devices adapted to associate webs or strips of web in correct register, longitudinally splitting mechanism, triangular forms adapted to fold the perfected webs, devices for guiding the same to folding rollers, tapes for conducting the printed sheets to the point of delivery or to mechanism for further treatment or manipulation of the same, and many other familiar devices. Imposing or the art of so placing page-forms or stereotype plates in proper relation to each other as to cause the pages of the printed sheets to succeed each other in proper numerical

order in the finished product, and the printed matter to be so arranged as to be read in the proper direction, was very old. There was in 1878 no room for invention in the distribution of stereotype page plates on form-cylinders in such manner as to produce orderly sequence or an odd or even number of leaves in the product. It is undoubtedly true that the mere fact that all the elements entering into a mechanical combination are old and well known does not negative patentability. Patentability may exist where a combination of old elements produces a new and useful result or an old result in a new and useful manner, provided always, however, that the conception and embodiment of the combination involve an exercise of the inventive faculty, and not merely the skill of a mechanic familiar with the art. Invention must exist in every case. Novelty and utility standing alone are not enough. The proposition that because one is the first to devise a useful improvement he should be treated as an inventor and entitled to the benefit of the patent laws is obviously unsound. It is true that where the question of invention is doubtful on the other evidence in the case the fact that the patented mechanism is in large demand and has gone into extensive use is evidence of invention by him who devised it, and may turn the scale in his favor. But this rule applies only to a doubtful case. Duer v. Lock Co., 149 U. S. 216, 13 Sup. Ct. 850, 37 L. Ed. 707, recognizes the well settled rule that the mere fact that a patented article is popular and meets with large and increasing sales is unimportant when the alleged invention is clearly without patentable novelty. Here, I am satisfied that the prior art clearly negatives invention. Not only were the parts of the several combinations old and well known, but the principle and operation of prior rotary printing machines were such as to bring the combinations alleged to have been infringed within the skill of an ordinarily intelligent mechanic familiar with the printing art. Invention cannot be predicated of the mere duplication or multiplication of well known mechanisms. "Straight line" presses fed from a single roll and provided with cutters, folding and delivery mechanism, were old. So the association or cross-association of a plurality of webs or strips of web was old. In the description of letters patent No. 195,115, dated September 11, 1877, issued to Edward L. Ford, assignor to R. Hoe & Co., the patentee says:

"It is also obvious that the products of two or more printing machines, whether of the same or varying sizes, may each be carried into the same folding-machine, whether it be of the rotating type, as in Fig. 5, or of the vibrating type, as in Fig. 3, by which machine they will be doubled or folded one within the other, and delivered as a single product."

Claim 2 in the Ford patent is as follows:

"(2) The combination of a folding apparatus with two independent printing mechanisms, whereby the products of the printing mechanisms are automatically carried into the folding apparatus and simultaneously doubled or folded, all substantially as described."

But it is unnecessary further to particularize. A careful examination of the testimony, patents, and other printed publications in the case, shows, in my judgment, that the art prior to the first date of alleged invention assigned by the complainant was such as wholly

103 F.—42

to negative patentable novelty in any of the combinations embodied in the claims alleged to have been infringed. Firm merely duplicated or multiplied well known printing mechanisms, brought the webs or strips of web coming from the several rolls into association by old and familiar means and severed the sheets of the webs or strips of web and folded and delivered them by old and well known apparatus. Even were this a case in which the question of invention was in doubt, the evidence is not of such a character as to bring it within the rule which turns the scale in favor of the alleged inventor where a patented device has supplied a long-felt want in the art and supplanted or superseded former devices adapted to produce the same result. There is evidence tending to show that "straight line" printing presses of the class to which the several claims alleged to have been infringed relate occupy less space, require less power and labor to operate them, and are less liable to stoppages through the breaking or tearing of the web, than the printing presses containing angle bars used or devised prior to or since the alleged date of invention by Firm, and capable of turning out approximately the same product. There is also evidence on the part of the defendant to the contrary. No printing machine containing the combinations of claims 11, 12 and 13 of patent No. 529,680, or any of them, was used or built by Firm or the complainant before the taking of testimony in this case. It further appears that since 1885 inclusive to the time of taking testimony in this case there were 117 angle bar presses and only 63 "straight line" presses sold and delivered. I may add that I have considerable doubt whether the complainant has not assigned too early a date for the alleged invention by Firm of the combinations of claim 7 of patent No. 415,321, and claim 6 of patent No. 410,271. There is much evidence on each side of this question. If Firm in fact devised and had a full and complete conception of those combinations in the early part of 1878 or by February 19, 1879, it is somewhat remarkable, in view of his alleged appreciation of their importance, that he should have waited nine years before making application to the patent office, and nearly nine years before consulting a patent attorney. The plea of poverty affords no explanation, for during that period he secured from the patent office a number of patents relating to printing mechanism. The evidence does not disclose any sufficient reason for such delay, and it is difficult to reconcile it with the date of alleged invention assigned by the complainant. The conclusion already reached renders it unnecessary to discuss other grounds of defence, some of which present grave questions.

The bill must be dismissed, with costs.