AMERICAN SALES BOOK CO. et al. v. BULLIVANT.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1902.)

No. 791.

1. PATENTS—ACTION FOR INFRINGEMENT—REVIEW ON WRIT OF ERROR.

An appellate court cannot assume, on a writ of error, where it does not appear from the record, that, in finding against the validity of a patent, the trial court failed to give full force to the presumption of patentable novelty arising from the granting of the patent.

2. SAME—NOVELTY—EVIDENCE OF COMPARATIVE UTILITY.

The question of the novelty of a patented device is one of fact, to be determined as such by the court, where a jury is waived; and, on the issue, evidence of comparative utility, as between such device and others claimed to be anticipations, may properly be considered, where there is doubt as to their practical identity.

3. SAME—EVIDENCE OF COMMERCIAL SUCCESS.

The mere fact that a patented article meets with increasing sales, and is popular, is wholly unimportant where it clearly appears that it was without patentable novelty.

4. APPEAL—REVIEW—FINDINGS OF FACT.

Where an action at law in a circuit court of the United States is, by stipulation, tried to the court without a jury, its findings of fact are not reviewable, on a writ of error, if there was any legal evidence upon which they could have been made.

5. PATENTS—NOVELTY—MANIFOLDING SALES BOOK AND HOLDER.

The Beck patent, No. 647,934, for a manifolding sales book and holder, claims 2 and 3, *held* void for lack of patentable novelty.

In Error to the Circuit Court of the United States for the District of Oregon.

The circuit court in this case found the following findings of fact:

"(1) That the plaintiff American Sales Book Company is a corporation duly organized, existing, and domiciled at Elmira, in the state of New York, and that Warren F. Beck is a citizen of the state of New York, also residing at Elmira, aforesaid, and that the defendant is a citizen of the state of Oregon.

"(2) That on the 24th day of April, 1900, letters patent of the United States were, upon the application of the plaintiff Warren F. Beck, as inventor, duly issued to said Beck, by the United States patent office, under number 647,934, for an improvement in manifolding sales book and holder; and in and by such letters patent there was granted, unto the said Warren F. Beck and his legal representatives, the exclusive right for the term of seventeen years, beginning said 24th day of April, 1900, being the date of said letters patent, to make, use, and sell, and permit others so to do, throughout the United States and territories thereof, manifold sales books embodying the features described in the specification forming a part of said letters patent, and therein claimed as follows: 'The combination, with a manifold-pad of a holder or cover therefor having a carbon or transfer-sheet secured thereto, said transfer-sheet being folded over upon the leaves of the pad at their free ends, and having a portion cut away to expose a portion of the leaves at or near their free ends, for the purpose set forth. The combination, with a manifold-pad, of a carbon or transfer-sheet normally resting upon the top of the pad, and overlying the leaves thereof, said transfer-sheet having a portion cut away to expose a portion of said leaves at or near their free ends for the purpose set forth, the leaves at their free ends being otherwise concealed by the transfer-sheet.' And that plaintiffs' Exhibit A is a true copy of said letters patent, and plaintiffs' Exhibit B is a manifolding sales book embodying said patent improvement.

"(3) That the said Warren F. Beck is still the owner of said letters patent, and that, by an agreement duly entered into between himself and the plaintiff American Sales Book Company, the former gave the latter the exclusive right to make, use, and sell throughout the United States and its

territories manifold sales books, or pads, embodying the alleged invention described and claimed in said letters patent.

"(4) That the defendant is, and for a long time has been, carrying on a grocery business at Nos. 461–463 Jefferson St., in the city of Portland and district of Oregon.

"(5) That, subsequent to the granting of said letters patent, the defendant, without authority from or consent of the plaintiffs, or either thereof, or their legal representatives, procured from one W. H. Jarrett, doing business under the name of the Ideal Duplicate Order Book Company at Seattle, Washington, a number of sales books of the style of plaintiffs' Exhibit C; and that the defendant used said duplicate sales books in the ordinary course of his business, and continued to so use the same after he had been personally advised of the granting of said alleged letters patent to the said plaintiff Warren F. Beck, and the alleged rights of the plaintiff American Sales Book Company under said alleged letters patent.

"(6) That the manifold sales book procured and used by the defendant as aforesaid embodied the said features and improvements patented to the said Warren F. Beck by said letters patent.

"(7) That prior to the discovery, by said Warren F. Beck, of said alleged patented improvement in manifolding sales book, no manifolding sales books were made, used, or known embodying said particular and patented features or improvements, to wit, comprising a holder, or cover, and a pad on the top of which normally rested a carbon or transfer-sheet, said sheet overlying the free ends of the leaves of the pad, and covering the leaf under it; and said transfer-sheet having a portion cut away to expose a portion of said leaf under it near its free end, and facilitating the withdrawal of the same from under said transfer-sheet, as in said patent described and claimed, and as shown in plaintiffs' Exhibit B. But for many years prior to the application for the issuance of the said letters patent on said alleged invention of Beck, duplicate order books were in general use in the United States, having a carbon sheet, loose or secured in place, for transferring the memorandum of the order written on one sheet to a duplicate sheet, or sheets, arranged below, one illustration of which is defendant's Exhibit A. But in none of such manifolding books did the carbon sheet have a corner cut away, or a thumbhole for the purpose stated by said Beck in his specification of his said invention, forming a part of said letters patent.

"(8) That, prior to the said invention and letters patent, duplicate order books with carbon were also in common use in the United States, in which books certain sheets thereof on which the memorandum was to be written or copied had corners cut away, as shown in illustration on card of Charles E. Crosby & Company, being defendant's Exhibit B, and also as illustrated by defendant's Exhibit C.

"(9) That, for many years prior to said invention of Beck, books, ledgers, and the like have been in common use in the United States, which, for the purpose of facilitating the use of the index with which they were provided, had thumbholes enabling the opening of the book at a certain place.

"(10) That in accordance with said agreement between the plaintiffs, American Sales Book Company and Warren F. Beck, said American Sales Book Company has extensively practiced the said alleged patented invention, and manufactured, advertised, and introduced throughout the United States manifold sales books embodying said alleged patented improvement; and that in the Northwestern states, within the year ending about August, 1901, large quantities of manifold sales books embodying said alleged invention, to wit, about 500,000, have been sold to merchants and others in said Northwestern territory, and are now in use in said territory.

"(11) That the defendant relied on the stipulation as to facts herein, and also as illustrated by defendant's Exhibits A, B, and C, and also upon the use of thumbholes in indexes for books, as proving that the said invention lacks novelty, and is merely a mechanical change of said existing devices.

"(12) That the said alleged patented improvement offers no greater advantages or utility than the form of manifold sales books in use in the United States prior to said alleged patented invention, as shown by the evidence, defendant's exhibits, and stipulation herein.

"And, as a conclusion of law, the court finds: That the patent relied upon by the plaintiffs, being numbered 647,934, and issued to Warren F. Beck by the United States of America under seal of the patent office, and on the 24th day of April, 1900, is void for lack of novelty; that, being void, the defendant, Josephus Bullivant, Jr., by the acts committed has in no way damaged the plaintiffs herein, and that a judgment be entered in favor of the defendant for his costs and disbursements taxed at thirty dollars; and that plaintiffs take nothing by reason of this action."

T. J. Geisler, for plaintiffs in error.

Otto J. Kraemer, for defendant in error.

Before GILBERT, Circuit Judge, and HAWLEY and DE HAVEN, District Judges.

HAWLEY, District Judge (after stating the facts as above). This action was brought by the plaintiffs in error to recover damages from defendant for the infringement of letters patent No. 647,934, dated April 24, 1900, issued to Warren F. Beck of Elmira, N. Y., for "certain new and useful improvements in manifold-pads and holders." The following specification is set forth in the letters patent:

"My invention relates to improvements in the pads used by merchants and others in taking manifold copies of orders, etc., and to the holders for such pads, the objects of my improvements being: First, to provide a simple and cheap form of holder wherein a pad and a carbon or transfer-sheet may be placed and replaced independent of one another; and, second, to provide means for manipulating the leaves of the pad without touching the transfer-sheet with the fingers. I accomplish these objects by the construction and arrangement of the parts, as illustrated in the accompanying drawings."

The claims of the patent which are alleged to be infringed read as follows:

"(2) The combination, with a manifold-pad, of a holder or cover therefor having a carbon or transfer-sheet secured thereto, said transfer-sheet being folded over upon the leaves of the pad at their free ends, and having a portion cut away to expose a portion of the leaves at or near their free ends for the purpose set forth.

"(3) The combination, with a manifold-pad, of a carbon or transfer-sheet normally resting upon the top of the pad and overlying the leaves thereof, said transfer-sheet having a portion cut away to expose a portion of said leaves at or near their free ends for the purpose set forth, the leaves at their free ends being otherwise concealed by the transfer-sheet."

A stipulation was filed by the respective parties waiving a jury, and the case was tried before the court. They also stipulated that certain specified facts should be assumed as duly proven. Upon the evidence in the case and the stipulation as to certain facts, the court found the findings of fact and conclusions of law set forth in the foregoing statement.

The plaintiffs in error have made fourteen specific assignments of error upon which they rely for a reversal. It will not, however, be necessary to specifically notice these assignments; a general reference to the most essential points will be deemed sufficient.

It is argued by plaintiffs in error that the trial court failed to recognize the force of the rule of law that a patent for an invention is prima facie evidence of the existence of all the facts essential to its validity. In support of this argument, plaintiffs in error claim that

the result arrived at by the court below could not have been reached by any possibility had this rule of law been applied, and assert that the court below had a doubt, and, instead of resolving its doubt in favor of the patent, the court below resolved its doubt against the patent. It is unnecessary for the court to include in its findings of fact the principles of law applicable to patent cases, and there is nothing in the record which justifies the statement of the plaintiffs in error that the court had any doubt upon the points referred to, or, if it had any doubt, that it did not resolve it in favor of the patent. The result arrived at did not of itself show, or tend to show, that the court did not apply the force of the rule of law as to the presumptions in favor of the validity of the patent.

This court cannot assume that any facts appeared on the hearing in the court below which are not disclosed by the record. There is no force in counsel's argument on this point.

In Palmer v. Village of Corning, 156 U. S. 342, 15 Sup. Ct. 381, 39 L. Ed. 445, the court said:

"There is no doubt that in this, as in all similar cases, the letters patent are prima facie evidence that the device was patentable. Still, we are always required, with this presumption in mind, to examine the question of invention vel non upon its merits in each particular case."

In Reckendorfer v. Faber, 92 U. S. 347, 352, 23 L. Ed. 719, the court held that the decision of the commissioner of patents in the allowance and issue of a patent creates a prima facie right only; and, upon all the questions involved therein, the validity of the patent is subject to examination by the courts, and in the course of its opinion said:

"The defense of want of novelty is set up every day in the courts, and is determined by the court or the jury as a question of fact upon the evidence adduced, and not upon the certificate of the commissioner."

The books are full of cases where patents regularly issued by the patent office have been declared void. It is only in cases of doubt upon the point that the presumption arising from the issuance of the patent will have any controlling influence upon the mind of the court.

It is next claimed:

"That utility is suggestive of originality; that the fact that the Beck manifolding sales book has gone into general use displacing other books is strong evidence that the patented improvement was a product of an inventive act."

The defendant in error does not controvert the question of the utility of the patent as a basis for a patent, but contends that the evidence as to the comparative utility claimed for it over defendant's Exhibit A was introduced, not for the purpose of proving utility as a basis of a patent, but as evidence of novelty, which was the real fact in issue. The question of novelty is a question of fact for the jury, or, when a jury is waived, is a question of fact to be decided by the court. In addition to the authorities heretofore referred to, see Westlake v. Cartter, 6 Fish. Pat. Cas. 519, Fed. Cas. No. 17,451; Battin v. Taggert, 17 How. 74, 85, 15 L. Ed. 37.

In 1 Rob. Pat. § 344, the author says:

"The utility of an invention is often properly considered by the courts in their investigation of two different topics with which, otherwise, it has

no connection: First, upon the question whether or not ·a given art or instrument was produced by the exercise of inventive, as distinguished from mechanical, skill, the actual utility of the invention may become important. * * * Second, upon the question of novelty, where doubt arises concerning the identity of two inventions, and whether the apparent diversities between them are formal or substantial, the superior utility of one may be sufficient to remove the doubt. * * * The relation of these two kinds of utility, the actual and the comparative, to these two questions of novelty and inventive skill, is often much confused through failure to regard the real distinctions which obtain between them. But they are utterly dissimilar in character and in effect, as well as in the principles upon which those relations are established; and their real value in affording a solution of these questions is lost whenever those distinctions are ignored."

It is, among other things, claimed that the court erred "in not giving judgment in favor of the plaintiffs in error on the facts found by the court." It is true that some of the findings mention certain facts tending to support the validity of the patent, but this does not show that the court erred in disposing of the case on the ground of lack of novelty in the patent. There are but few patents issued that do not possess some valuable and essential features of the patent law. This is frequently recognized in the decisions of the courts where it is held that the patent lacks invention or is void for want of novelty.

In Richards v. Elevator Co., 159 U. S. 477, 487, 16 Sup. Ct. ·53, 40 L. Ed. 225, the court said:

"The device is undoubtedly a convenient one, and appears to have proven profitable to the patentee; but we are unanimously of opinion that it lacks the necessary quality of invention."

The mere fact that a patented device or article meets with increasing sales and is popular is wholly unimportant when it clearly appears that the invention is without patentable novelty. Duer v. Lock Co., 149 U. S. 216, 223, 13 Sup. Ct. 850, 37 L. Ed. 707; Printing-Press Co. v. Scott (C. C.) 103 Fed. 650, 657; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 45 C. C. A. 544, 106 Fed. 693, 707, and authorities there cited.

In McClain v. Ortmayer, 141 U. S. 419, 429, 12 Sup. Ct. 76, 35 L. Ed. 800, the court said:

"This court has held in a number of cases * * * that in a doubtful case the fact that a patented article had gone into general use is evidence of its utility; it is not conclusive even of that,—much less of its patentable novelty."

In Klein v. City of Seattle, 23 C. C. A. 114, 77 Fed. 200, 204, this court said:

"The fact that a patented device has gone into general use, and has displaced other devices, is evidence of its value and usefulness, and is always of importance in considering the question whether the device. or machine is patentable. * * * But the fact that the patented device has gone into general use, while evidence of its utility, is not conclusive evidence of its patentable novelty. * * * A patent must combine utility, novelty, and invention,—it may, in fact, embrace utility and novelty in a high degree,—and still be only the result of mechanical skill, as distinguished from invention."

The court below, in the twelfth finding, against which it is seriously argued there is not sufficient evidence to support it, found on the question of comparative utility, which is a pure question of fact, that Beck's

alleged invention was no better than the combination evidenced by defendant's Exhibit A. Evidence was offered upon this point which tended to sustain this and the other findings of fact, and the question arises whether this court can review such findings. Did the court below err in its conclusions upon the facts that the patent relied upon by plaintiffs "is void for want of novelty"? The plaintiffs in error have argued this case upon the theory that it is the duty of this court to review all the findings of fact found by the court below, and determine whether there is any sufficient evidence to support the findings or justify the conclusion reached by the circuit court. We do not understand such to be the law. The statutes of the United States provide that the trial of issues of fact in actions at common law in the circuit and district courts shall be by jury. Rev. St. §§ 566, 648, 649; 2 Fost. Fed. Prac. § 374; King v. Smith, 49 C. C. A. 46, 110 Fed. 95, 54 L. R. A. 708, and authorities there cited. In section 1007, Rob. Pat., it is said that the rules of evidence in actions for infringement of patents "are in their general character identical with those by which the federal courts are guided in other suits at law." The supreme court of Oregon, in which state this case was tried, has held that a finding of fact by a trial court in an action at law will not be disturbed on appeal if there is any evidence to support it. Bartel v. Mathias, 19 Or. 483, 490, 24 Pac. 918; Liebe v. Nicolai, 30 Or. 364, 48 Pac. 172. In the national courts it has frequently been held that, where the parties consent that the case be tried before a judge or referee, the only question presented by the writ of error is whether there is any error of law in the judgment upon the facts as found by the judge or referee. The court's findings upon questions of fact are not subject to review in the appellate court if there is any legal evidence upon which such findings could be made. U. S. v. Dawson, 101 U. S. 569, 25 L. Ed. 791; Boogher v. Insurance Co., 103 U. S. 90, 95, 26 L. Ed. 310; Miles v. U. S., 103 U. S. 304, 26 L. Ed. 481; Paine v. Railroad Co., 118 U. S. 152, 158, 6 Sup. Ct. 1019, 30 L. Ed. 193; Stanley v. Board, 121 U. S. 535, 547, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Hathaway v. Bank, 134 U. S. 494, 498, 10 Sup. Ct. 608, 33 L. Ed. 1004; Rogers v. U. S., 141 U. S. 548, 556, 12 Sup. Ct. 91, 35 L. Ed. 853, and authorities there cited; 7 Enc. Pl. & Prac. 847, 848. In Myers v. Brown, 42 C. C. A. 320, 102 Fed. 250, where it was urged by the plaintiff in error that the verdict of the jury was against the weight of the evidence, the court said: "The conclusive answer to this suggestion is that upon a writ of error the appellate court does not review controverted questions of fact." In Stanley v. Board, 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000, the court said:

"Several of the assignments of error presented for our consideration are to rulings of the court below upon the evidence before it, to its findings of particular facts, and to its refusal to find other facts. Such rulings are not open to review here; they can be considered only by the court below. Where a case is tried by the court without a jury, its findings upon questions of fact are conclusive here; it matters not how convincing the argument that upon the evidence the findings should have been different."

For the reasons herein stated, the judgment of the circuit court must be affirmed. It is so ordered.