### KISSEL MOTOR CAR CO. v. WALKER et al.

(Circuit Court of Appeals, Fifth Circuit. February 5, 1921.)

No. 3598.

1. **Appeal and error** ⊛══1008(2)—**Findings of fact on trial to court by stipulation are conclusive.**

   Where an action at law by stipulation is tried by the court, its findings of fact, supported by evidence, are conclusive on the appellate court.

2. **Monopolies** ⊛══17(1)—**Contract containing restrictions on trade in violation of state statute invalid.**

   An interstate contract for the sale of motorcars to a local dealer in Texas *held* rendered invalid by a provision imposing restrictions on resale of the cars by the purchaser in violation of the Anti-Trust Law of Texas, and to invalidate notes given for the purchase price of such cars.

In Error to the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Judge.

Action by the Kissel Motor Car Company against T. L. Walker and another. Judgment for defendants, and plaintiff brings error. Affirmed.

Samuel B. Dabney, of Houston, Tex., for plaintiff in error.

Sam Streetman, M. E. Kurth, and Thomas H. Ball, all of Houston, Tex., for defendants in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. On August 1, 1913, the Kissel Motor Car Company, a Wisconsin corporation, entered into a contract with T. L. Walker of Houston, Tex., for the purchase and sale by him of

Kissel Kars during the year ending July 31, 1914. The contract was entered into through a branch house or representative, the Southwest Kissel Kar Branch, a corporation. The Kissel Motor Car Company had never procured a permit to do business in Texas. The Southwest Kissel Kar Branch had procured such a permit and its place of business was in Dallas, Tex. The contract was accepted and approved in writing by the Kissel Motor Car Company.

For the two preceding years Walker had had a substantially similar contract (except as to the restrictions hereinafter quoted) with said Southwest Kissel Kar Branch. The terms of payment in these contracts were stated prices "f. o. b. at Hartford, draft against bill of lading payable (with collection charges) upon arrival of goods."

In October, 1912, this contract was modified by an agreement that the bill of lading might be taken up by 90-day notes signed by Walker and J. M. West, or that, instead of signing such notes, West might write a letter stating he would be responsible for all obligations incurred by Walker with said Southwest Kissel Kar Branch. On November 2, 1912, West wrote to said branch referring to their letter to Walker and advising that he would personally guarantee all obligations incurred by Walker.

In the contract of August 1, 1913, the terms of payment were:

"All cars to be paid for by sight draft attached to bill of lading to be drawn through National Bank of Commerce at Houston, Tex., per agreement with J. M. West"

—referring to the guaranty executed by West. Said last-mentioned contract, among other provisions, contained the following:

"In consideration of the purchase of said cars, and the other agreements of the second party herein, the first party grants to the second party the exclusive sale of Kissel Kars in the following territory: Harris county—and agrees to protect the second party in such territory so far as it can. But it is not to be held liable for damages or profits on sales made therein without its knowledge and/or beyond its control. * * *"

Also:

"Second party [being defendant in error T. L. Walker] further agrees not to sell Kissel Kars in any other territory than that described herein, and in cases of unauthorized sales he is to pay to the first party a sum equal to the discount on the cars so sold."

Suit was brought by said Kissel Motor Car Company on four notes given by Walker, one payable to the order of Kissel Motor Car Company, and the others to the order of the Southwest Kissel Kar Branch and indorsed by it to the plaintiff, and also against said West as a guarantor thereof, the petition setting forth the letter of West of November 2, 1912, as containing such guaranty.

Each defendant pleaded that said notes were given for automobiles and accessories sold by plaintiff to Walker under said contract of August 1, 1913, and that the restriction therein contained on Walker's making sales outside of Harris county, Tex., was in restraint of trade, in violation of the laws of Texas, and rendered these notes null and void. Walker also pleaded that since the filing of the suit he had been adjudicated a bankrupt and discharged, and that this discharged the

debt sued on as to him. West also pleaded that prior to the giving of the notes sued on he had withdrawn his guaranty.

The case was, by written stipulation, tried before the court without a jury.

The court found in favor of Walker on his plea of discharge in bankruptcy, but that West had not withdrawn his guaranty.

The court found that each of the notes sued on was given for an automobile or automobiles purchased through the Southwest Kissel Kar Branch in pursuance of said written contract of August 1, 1913.

As to the three notes payable to the order of the Southwest Kissel Kar Branch, he found that the automobiles so purchased were delivered to the defendant Walker from the warehouse of the Southwest Kissel Kar Branch at Dallas, Tex.

He also found that no fraudulent representations were made by Walker as charged, and that therefore he was discharged from said debt by his discharge in bankruptcy.

[1] As there is evidence in the record to support such findings, they are conclusive as to such facts in this court. American Sales Book Co. v. Bullivant, 117 Fed. 255, 54 C. C. A. 287; West Virginia Northern R. Co. v. United States, 134 Fed. 198, 67 C. C. A. 220; United States v. United States Fidelity Co., 236 U. S. 512, 527, 35 Sup. Ct. 298, 59 L. Ed. 696.

[2] The court found as a matter of law that said clauses giving to Walker the exclusive sales of Kissel Kars in Harris county and restricting his right to sell elsewhere than in Harris county made said contract illegal and void as in violation of the Texas anti-trust statutes (Rev. St. 1911, arts. 7796–7799) and rendered said notes illegal, and found in favor of both defendants on this ground.

As stated by counsel for the plaintiff in error in his brief:

"On this writ of error there is before this court only these general questions: Did the sales agreement of August 1, 1913, have any application as a defense, and, if it did, was it illegal, and, if there was any illegality, did it taint the consideration of the notes so as to make them null and void?"

The main contention of the plaintiff in error in this court was that the sales of these automobiles under the contract were wholly in interstate commerce, that the restriction on the vendor to sell to others in Harris county, and of the vendee not to sell outside of Harris county, did not affect the interstate contract for purchase and sale, and that the District Judge erred in holding that the sale of the automobiles in interstate commerce was affected by the Texas anti-trust statute. It was conceded that, had the contract related to a sale of automobiles by the Kissel Motor Car Company to the defendant Walker wholly intrastate, these restrictive clauses would have rendered it and the notes void. The insistence here is that the validity of the contract of sale is not governed by the Texas statutes because it is claimed "the agreement of August 1, 1913, dealt exclusively with interstate commerce and the sale of automobiles in interstate commerce."

We are unable to agree with the plaintiff in error that the contract dealt exclusively with the sale of automobiles in interstate commerce.

The leading case of Fuqua v. Pabst Brewing Association, 90 Tex.,

298, 38 S. W. 29, 750, 35 L. R. A. 241, involved the sale of beer to be transported from Milwaukee, Wis., to Amarillo, Tex. The contract contained restrictions on the use and sale of the beer in Amarillo county by the parties to the contract which violated the anti-trust statutes of Texas. To a suit against the purchaser and his guarantors the violation of this statute was pleaded as rendering the entire contract illegal. To it the reply that the sale was a transaction in interstate commerce and not invalidated by the Texas anti-trust statutes was urged. The Supreme Court of Texas answered this contention as follows:

"The parties contracted for the sale and purchase of beer to be transported from Milwaukee to Amarillo and to be there delivered to Kingsbury and become his property. So far the transaction was interstate commerce, and not subject to state regulation without the consent of Congress, nor did the statute undertake in any way to regulate or prohibit the same. But the parties by the same contract voluntarily went further and so dealt with the subject, after it had ceased to be an article of interstate commerce, as to create a 'trust,' as above shown, in violation of the statute. A portion of the stipulations of the contract being lawful and the others unlawful, the taint of illegality affects and destroys the whole. Edwards County v. Jennings, 35 S. W. 1053, 89 Tex. 618.

"The commerce clause of the Constitution was not designed to protect the contractual rights of a person who thus voluntarily intermingles an otherwise legal interstate commerce transaction with an entirely local and unlawful one."

Fuqua v. Pabst Brewing Ass'n, 90 Tex. 302, 38 S. W. 30, 150, 35 L. R. A. 241.

This is followed in J. R. Watkins & Co. v. Johnson et al. (Tex. Civ. App.) 162 S. W. 394, writ of error denied 107 Tex. 706, 170 S. W. xviii.

Nor do we think the same is a divisible covenant, but that it formed an essential part of the consideration for the making of the agreement. The contract of August 1, 1913, provided not only for the shipment and purchase of these cars, but an integral part of it related to the sale of these cars by the vendee in Texas after he had acquired the same. Without such restrictive covenant it is doubtful if the contract for sale would have been made. The contract shows affirmatively that these restrictive agreements constituted a part of the consideration for the purchase and sale of the cars.

Where notes were given for the price of goods purchased under a contract illegal under the anti-trust statutes, the court, replying to the point that the suit was founded alone on the notes, said:

"It is further contended that the illegal character of the contract should not defeat a recovery upon the notes, as no aid from such contract is required to establish plaintiff's right to recover upon such notes, citing the cases of De Leon v. Trevino, 49 Tex. 93; Pfeuffer v. Maltby, 54 Tex. 461; Brooks v. Martin, 2 Wall, 70. If these notes, as found by the court, were executed for articles purchased under and in pursuance of the terms of the contract, then the provisions in restraint of trade contained in the contract became part of the consideration, and those provisions, being in violation of our statute, tainted the transaction, and rendered the notes void. In the case of Wegner v. Biering, 65 Tex. 509, Mr. Associate Justice Robertson said: 'It is obvious that there is ample valid consideration to support the promise sued on; yet, if, to the abundance of valid consideration, there has been added a leaven

of what is illegal, the whole contract is tainted. Story, Cont. § 583; Bishop, Cont. § 471; Pollock, Cont. § 318.'" Columbia Carriage Co. v. Hatch, 19 Tex. Civ. App. 124, 47 S. W. 291.

Clearly this restrictive clause related to the carrying on of business in Texas, and its legality is to be governed by the laws of Texas. That this contract was illegal under the Texas anti-trust statutes (Rev. St. Tex. arts. 7796–7799), and that this illegality defeated any recovery of the consideration contracted to be paid for these automobiles, is settled by a long line of Texas decisions. Wood v. Texas Ice & Storage Co. (Tex. Civ. App.) 171 S. W. 497; Armstrong v. Rawleigh Medical Co. (Tex. Civ. App.) 178 S. W. 582; Rawleigh Medical Co. v. Fitzpatrick (Tex. Civ. App.) 184 S. W. 549; Penn. Rubber Co. v. McClain (Tex. Civ. App.) 200 S. W. 586; American Brewing Co. v. Woods (Tex. Com. App.) 215 S. W. 448.

The decision of this court in the case of Cole Motor Car Co. v. Hurst, 228 Fed. 280, 142 C. C. A. 572, is in accord with the present decision. The contract therein construed was made in Indiana, the cars were to be shipped to Hurst in the state of Texas, and to be paid for by Hurst as sold by him. The District Court had held the contract to be one of sale, and therefore illegal. This court said:

"The crucial question here is: Did the first and subsequent contracts, with certain typewritten addenda, continue or constitute Hurst as agent or consignee, or did they evidence the sale of the motorcars to him? See Welch v. Phelps and Byelow Windmill Co., 80 Tex. 653–656, 36 S. W. 71."

This court construed the contract to be one of consignment, and not of sale, and on this ground reversed the District Court.

The contract in the present case is clearly one of sale. It is not contended that it was one of consignment. This would seem to make the decision in Cole Motor Car Co. v. Hurst an authority in support of the finding that this contract is in violation of the Texas statute.

The judgment of the District Court is affirmed.