## ROGERS v. WESTINGHOUSE ELECTRIC SUPPLY CO.

### No. 12327.

Court of Civil Appeals of Texas. Dallas.
April 23, 1938.

Rehearing Denied May 21, 1938.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

Thompson, Knight, Baker, Harris & Wright, of Dallas, for appellee.

LOONEY, Justice.

A. C. Rogers, plaintiff, sued Westinghouse Electric Supply Company, Inc., to recover damages—actual and exemplary—alleging breach by defendant of a dealer's contract between the parties.

Defendant, a Texas corporation doing business in the city of Dallas, was distributor of Westinghouse Electric & Manufacturing Company's refrigerators and equipment within a prescribed territory, including the city of Dallas; it being alleged by plaintiff that, on September 24, 1931, he and defendant company entered into a dealer's contract, whereby plaintiff was given the right to resell Westinghouse refrigerators and equipment, within a defined territory described as Metropolitan Dallas and "none other." The trial court sustained a general demurrer to plaintiff's petition, and, as he declined to amend, the suit was dismissed, hence the appeal.

The court evidently sustained the demurrer on the idea that, the sales agreement alleged, for the breach of which plaintiff sought damages, violated the anti-trust laws of the state, Rev.St.1925, art. 7426 et seq., Pen.Code 1925, art. 632 et seq., in that plaintiff was limited to a prescribed territory within which to make resales, and was given the exclusive right to sell within the given territory.

The agreement or agreements between the parties, the breach of which furnished the basis for the suit, are alleged by plaintiff substantially as follows: That about September 24, 1931, defendant's agent— E. L. Jones—represented to plaintiff that Fred B. Gamble, Inc., at that time defendant's authorized dealer in the city of Dallas and adjacent territory, for reasons stated, would cease to act as such dealer, and that defendant company had authorized its said agent to secure another dealer to take the place of Gamble, Inc.; and plaintiff, relying upon the representations of Jones, was induced to enter into the written contract of September 24, 1931 (attached as Exhibit A to plaintiff's petition), under the terms of which plaintiff was granted the right, during the continuance of the agreement, to sell said refrigerators in the territory therein described (the territory being Metropolitan Dallas and none other); that the representation that Gamble, Inc., was going out of business and would cease to be defendant's dealer in Dallas, was false, as plaintiff subsequently learned that Gamble, Inc., did not intend to cease such business, nor did defendant company desire or intend that it would cease as dealer; and that the representation to that effect by Jones was false and made for the purpose of inducing plaintiff to enter into the agreement and, in fact, did induce him to enter into the dealer's arrangement in question, in pursuance of which plaintiff incurred expenses, purchased from defendant refrigerators and equipment and, from time to time made sales

thereof, and in other respects complied with the terms and conditions of the contract, and, at all times, stood ready to fully comply with same; that the original contract was supplemented by a letter of even date therewith, written by defendant's agent Jones (copy of which is attached to plaintiff's petition, marked Exhibit B); and that a second supplement to the original contract was made January 29, 1932, as evidenced by a letter of that date, written by defendant's agent Jones (attached to plaintiff's petition, marked Exhibit C); that plaintiff was induced to agree to same by reason of the following: After discovering that Gamble, Inc., had not ceased business, but was continuing the sale of refrigerators, etc., that otherwise plaintiff could and would have sold, as an inducement to plaintiff to agree to said supplements, defendant's said agent Jones represented that, in truth and in fact, Gamble, Inc., was closing out said business, and that the only new purchases of refrigerators and equipment made by it were to fill orders taken prior to plaintiff's contract, or to fill unsolicited orders, and that Gamble, Inc., would only continue as a special dealer for the purpose of closing out the business, and that on all such purchases plaintiff would, receive an overriding commission or compensation, as provided in said supplements; that the representation as to Gamble's discontinuing business was false, but relied upon by plaintiff, inducing him to continue in said business. Plaintiff alleged further that Gamble, Inc., had a well-established business, which would have inured to plaintiff's benefit and enhanced his profits, if Gamble, Inc., had ceased to be plaintiff's competitor; that, after entering into the original contract and discovering that Gamble, Inc., was continuing business as usual, plaintiff advised defendant of said fact and continued to complain of that condition; and on each such occasion defendant's said agent represented to plaintiff that he was mistaken in regard to the matter; that Gamble, Inc., had been notified to discontinue said business, and in fact was closing it out; that all of said representations were false and known by Jones to be false, but plaintiff was induced thereby to continue business under the contract.

That plaintiff suffered damage by reason of the acts, conduct, and representations of defendant's agent Jones in the following particulars: That by reason of Gamble, Inc., continuing to sell refrigerators in the territory allotted in the contract to plaintiff, he suffered material damage in the loss of sales and profits incident thereto; that defendant continued to sell its refrigerators to Gamble, Inc., at a price lower than that quoted to plaintiff—in this way discriminating against plaintiff; that defendant co-operated with Gamble in the sale of said products and refused to co-operate with or assist plaintiff; and "Plaintiff further alleges and says that, it was the understanding, intention and agreement with defendant that all Westinghouse refrigerators purchased from it were to be sold only from the Westinghouse store so opened, prepared and maintained by plaintiff A. C. Rogers, suitable for the purpose of sale of said refrigerators as herein more fully alleged"; that, if he had been permitted to continue the sales of refrigerators as per their agreement (without competition), he would have sold at least 600 machines, and earned a net profit of $18,600, and that he would have earned $3,500 as an overriding commission on sales made by Gamble, Inc., as hereinbefore referred to; also sought recovery of $25,000 in the nature of exemplary damages.

■ Plaintiff's suit is not based upon an alleged breach of the written agreements (original or supplements), but, essentially, is based upon allegations to the effect that he was induced to become and remain defendant's dealer in the prescribed territory by reason of the false representations of defendant's agent Jones, to the effect that Gamble, Inc., the existing dealer in said territory, would go out of business, and that, by reason of Gamble's remaining as an active competitor, plaintiff lost profits on sales of refrigerators he could and would have made if such competition had not existed—for which, that is, the lost profits—plaintiff sought damages. The alleged inducing verbal representations of defendant's agent Jones, basis of the dealer's contract, we think, clearly violated the anti-trust statutes of the state—in that plaintiff was given the exclusive right to sell refrigerators and equipment in the prescribed territory, that is, within the area of Metropolitan Dallas and "none other."

In Watkins Co. v. McMullan, Tex. Civ. App., 6 S.W.2d 823, the contract involved confined the purchaser of merchandise to a particular territory, as in the instant case. The court held the contract violative of the anti-trust laws, referring to R.S. art. 7426; P.C. art. 1632. To the same effect see Henderson Tire & Rubber Co. v. Roberts,

Tex.Com.App., 12 S.W.2d 154; Chunn v. Rawleigh Co., Tex.Civ.App., 9 S.W.2d 268; Miller Brewing Co. v. Coonrod, Tex.Civ. App., 230 S.W. 1099; Raleigh v. Land, 115 Tex. 319, 321, 279 S.W. 810.

█ However, plaintiff takes the position that, as the Westinghouse electric refrigerator, or at least the icing unit thereof, was a patented article, the owner of the patent had the legal right to give the dealer an exclusive territory within which to sell the article. Assuming that the icing unit, part of the equipment of the refrigerator, was a patented article and owned either by the Westinghouse Electric & Manufacturing Company or the Westinghouse Electric Supply Company, defendant herein, the dealer's contract in question contemplated an absolute sale of the article by the Manufacturing Company to the Supply Company, and by the Supply Company (defendant) to plaintiff, showing conclusively that, as the owner of the patented article parted with title, the doctrine invoked is not applicable, hence the attempt to prescribe restrictions as to territory, etc., is clearly within the condemnation of the anti-trust laws of the state. This doctrine was announced in Coca-Cola Co. v. State, Tex.Civ.App., 225 S.W. 791; National Automatic Mach. Co. v. Smith, Tex.Civ.App., 32 S.W.2d 678.

For reasons stated, we do not think the court erred in sustaining the general demurrer and in dismissing plaintiff's suit; therefore the judgment is affirmed.

Affirmed.