**PATRIZI v. McANINCH.**

No. 10142.

Court of Civil Appeals of Texas.   Austin.

May 20, 1953.

Rehearing Denied June 10, 1953.

Vinson, Elkins, Weems & Searls, Ben H. Rice, III, Ben F. Weems, Houston, for appellant.

James H. Hart, William A. Brown, Austin, Hart, Brown & Sparks, Powell, Wirtz & Rauhut, Austin, of counsel, for appellee.

HUGHES, Justice.

This was a suit by appellee, L. L. McAninch, against Victor J. Patrizi for an accounting and for judgment for the amount found to be due under a contract between the parties relating to the sale of a frozen custard making machine, appellee being the seller and appellant the purchaser.

A nonjury trial resulted in judgment for appellee for the sum of $2,069 with six per cent interest from the date of the judgment.

No findings of fact or conclusions of law were requested of or made by the trial court.

The contract between the parties is as follows:

"Agreement

"Agreement made this *26th.* day of *May,* 1948, by and between L. L. McAninch, hereinafter referred to as First Party, and *Victor J. Patrizi* hereinafter referred to as Second Party.

"Whereas, First Party has a written agreement dated *1st. May, 1948,* with Taylor Freezer Corporation, the manufacturer of Zest-O-Mat machines, in which the Taylor Freezer Corporation sells to First Party Zest-O-Mat machine, serial number *1003,* subject, however, to certain patent rights owned by Louis A. M. Phelan, and to payment of certain royalties, and in which Taylor Freezer Corporation agrees, for a period of ~~ten~~ *8* years from date, not to sell or lease any like Zest-O-Mat machines to any person, firm or corporation, other than First Party, for use or operation within a territory described as follows: *That area within the present City Limits of Beaumont, Texas that is within a one mile radius of the location known as 870-South 11th. Street,* and in which Taylor Freezer Corporation requires that First Party, or his assigns, shall use the name "ZESTO" in the advertising and sale of products manufactured in the above mentioned machine.

"Whereas, Second Party is desirous of purchasing a Zest-O-Mat machine **from** First Party, this agreement

"Witnesseth:

"1. That First Party hereby sells and assigns to Second Party Zest-O-Mat machine bearing serial number *1003.*

"2. That First Party agrees for a period of ~~ten~~ (*8*) years from date, not to sell or lease to any person, firm or corporation other than Second Party, or cause to be used in any other manner whatsoever, any like Zest-O-Mat machine within the above described territory.

"3. That First Party agrees that during the term of this agreement, Second Party shall use the name "ZESTO" in the advertising and sale of products manufactured in the above mentioned machine, and that Second Party will use only uniformly high quality ingredients, according to the formula approved by the Taylor Freezer Corporation. Second Party further agrees to use the name "ZESTO" in the advertising and sale of such products during the term of this agreement.

"4. That in consideration of such sale, Second Party agrees to pay to First Party the sum of $3,000.00. Said sum to be paid as follows: *Cash with order* with order, and ........................... upon delivery; in addition thereto, Second Party agrees to pay to First Party a royalty of $20¢ per gallon of mix used in said Zest-O-Mat machine, during the 8 year period from *1st. July, 1948* to *1st. July, 1956.* Second Party agrees to keep true and accurate books of account and to render unto the First Party, on or before the fifth day of each month during said ~~ten~~ (8) year period, a statement in writing (under oath if required), setting forth the total amount of mix used in said Zest-O-Mat machine during the preceding month, and to accompany said statement with a remittance in full covering the amount shown due thereby, and payable to First Party under the terms hereof; said books of account shall be open to inspection by First Party or its duly authorized representative at all reasonable times during business hours. Second Party further agrees that in no event shall the royalty paid be less than $500.00 per year, per machine, for each year following its purchase, for the ~~ten~~ (8) year period and agrees that if the monthly royalty payments for any such year do not total $500.00 or more on each machine, Second Party will, on or before the tenth day of the month immediately following any such year, pay to First Party whatever sum might be necessary to constitute the $500.00 annual minimum royalty for each machine.

"5. That Second Party agrees for a period of ~~ten~~ (8) years from date not to sell, lend, lease or assign said Zest-O-Mat machine bearing serial number 1003 to anyone without the written permission or consent of the Taylor Freezer Corporation.

Second Party further agrees for a period of ~~ten~~ (8) years from date not to use, operate or cause to be operated in any manner whatsoever said Zest-O-Mat machine bearing serial number *1003*, at any location other than *870-South 11th. Street in the city of Beaumont, Texas.* without the written consent of the Taylor Freezer Corporation.

"6. That Second Party agrees, during the terms of this agreement to keep the place of business referred to in paragraph 5 in full operation a minimum of one hundred eighty (180) consecutive days in each calendar year, provided, however, that this particular provision shall be waived in the event Second Party cannot comply because of conditions beyond his control.

"7. That Second Party agrees to use only mix, flavors, cones and cartons of uniformly high quality in the preparation of the product sold under the trade-name of "ZESTO."

"8. That Second Party agrees to maintain the said premises and equipment, which are to be used in the performance of this agreement, in good repair and at a high degree of cleanliness and sanitation, and agree to make any reasonable improvements requested by the First Party within a period of thirty days following such a request. It is further agreed that all improvements and maintenance shall be made at no expense to First Party.

"9. All amounts due under this contract, including any damages for its breach, shall be paid in Travis County, Texas.

"10. It is understood and agreed by and between the parties hereto that the Zest-O-Mat machine sold under this contract is protected by certain patent rights and that the use of the trade-mark "ZESTO" is also protected under the laws of the United States of American covering trade-marks and trade-names. It is also understood that the use of the word "ZESTO" is of great importance in the manufacturing and sale of products resulting from the use of said machine. In fact, the use of the "ZESTO" trade-name or trade-mark is being held out to the public by the user of this machine as of great value and as a guarantee of the excellency of the products manufactured in said machine. The use of said machine and the sale of its products under the trade-name "ZESTO" is not a business that any dealer may engage in as a matter of common right. It can only be carried on by a dealer by permission or franchise from the First Party, with the consent of Louis A. M. Phelan, the owner of said patent rights.

"11. It is not intended by any provision of this contract to limit or restrict the sale of "ZESTO" products manufactured in said machine.

"12. Both parties hereby expressly agree and contract that it is the intention of neither party to violate public policy, statutory or common laws of the State of Texas, including the Texas Anti-Trust Statute. That if any sentence, paragraph, clause or combination of the same is in violation of the Anti-Trust law or any other Texas, or Federal law, such paragraphs, clauses or sentences, or combination of the same shall be inoperative and the remainder of this contract shall remain binding upon the parties hereto; that in any event, these paragraphs concerning the cash consideration and royalty shall be binding upon the parties, and Second Party shall not be relieved of the obligation to pay for the machine and subsequent royalties as herein provided. It is the intention of all parties hereto to make this contract binding only to the extent that it may be lawfully done under the existing laws of the State of Texas and the United States.

"13. It is further understood and agreed that in event of a breach or threatened breach of the terms of this contract by either party, the other party shall forthwith be entitled to an injunction restraining such other party from such breach without showing or proving any actual damage sustained.

"14. This agreement shall be binding upon and inure to the benefit of the successors and assigns of the First Party and the heirs, administrators, executives and assigns of the Second Party."

This agreement was approved by the Taylor Freezer Corporation therein mentioned.

Appellant's primary defense to this suit was that the contract sued upon was void and unenforceable because many of its provisions were in violation of the antitrust laws of this State and of the United States and in violation of public policy.

Further defensive pleadings were that the contract as a whole and the particular provisions declared upon was without consideration or that the consideration therefor had failed and that certain provisions of the contract were void for vagueness. It was also alleged that appellee was not the owner of the machine at the time of its sale to appellant.

Appellant has assigned eleven points of error in his brief none of which complain of the amount of the judgment.

Appellant's Points Nos. 1, 2, 3, 4 and 9 pertain to the failure of the court to declare the invalidity of the contract as a whole and the royalty provision in particular because in violation of antitrust laws and the public policy upon which they are founded.

It is to be noted that this suit does not seek the enforcement of any of the provisions of the contract except paragraph four requiring royalty payments.

It is also to be borne in mind that paragraph twelve of the contract provides that any illegal portion thereof shall be inoperative and that in any event the obligation concerning the cash consideration and royalty payments shall be binding.

■ In our opinion this saving feature of the contract removes all impediments based on other alleged illegal portions thereof to the enforcement of the agreement to pay royalties. Ford Motor Co. **v.** State, 142 Tex. 5, 175 S.W.2d 230, citing Nevels v. Harris, 129 Tex. 190, 102 S.W. 2d 1046, 1049, 109 A.L.R. 1464. These cases hold that a contract which provides for the performance of an agreement if lawful is not an agreement for performance if the thing mentioned is unlawful. In the last case cited the Court said: "It is the rule that all parts of a contract must be given effect if it is reasonably possible to do so. It is also the rule that men are

presumed to have intended to obey the law unless the contrary appears."

Clearly there is no question of the parties' intention here. They expressly stated that their intention was to make a contract legal in all respects but cautiously provided that if any unlawful agreement crept into the contract that it should become inoperative thus leaving the remaining portion of the contract in full force and effect. No sound reason has been advanced and none occurs to us for condemning such an agreement. Not strictly analogous but bearing some resemblance to this method of contracting is the severability clause inserted by the Legislature in many of the laws passed by it such clauses usually providing that if some portions of the Act be held unconstitutional the remaining provisions shall, nevertheless, be effective.

Appellant's fifth and sixth points raise the question that even if the contract between the parties is not invalid on its face that nevertheless the evidence conclusively shows an intentional course of conduct on the part of appellee to accomplish results in violation of antitrust laws and public policy.

■ While there is an implied finding of the trial court that no unlawful conduct upon the part of appellee was established we refrain from reviewing the evidence upon these points because of our decision that the saving clause in the contract precludes appellant from making this defense. We do not mean to say that a stipulation in a private contract can prevent punishment for unlawful acts or conduct. We do hold that where parties, as here, have contracted with reference to an inherently harmless and lawful business and have carefully and prudently guarded against the loss of valuable property and property rights that such parties should be bound by the terms of the contract and should not be permitted to persuade courts to render judgments producing unjust gains and unjust losses because of matters occurring dehors the written instrument and contrary to its explicit terms.

This brings us to points seven and eight which assert the lack or failure of consideration for the agreement to pay royalties.

As we understand the argument under these points it is that the saving clause as to illegal clauses of the contract instead of aiding the parties in making a valid contract prevents, per se, such accomplishment because of the uncertainty attached to the question of what is legal and what is not. We are not impressed with this argument. The uncertain legality of various covenants contained in the contract bespeaks the reasonableness and validity of the saving clause. Parties should be encouraged to contract with respect for the law and not in defiance of it. This was a contract which the parties could enter or not as they pleased. If it was agreeable to them, and it so appears, that in consideration of the sale of the Zest-O-Mat machine by appellee to appellant that the latter would, regardless of the efficacy of any other provisions in the agreement, pay the amount stipulated a contract is formulated, which, in our opinion, is plain, certain, and well supported by a valuable consideration and is valid in all respects.

Appellant's tenth and eleventh points are that there was a variance between the contract pleaded by appellee and the proof and that the paragraph pertaining to the payment of royalties is too vague to be enforced.

The variance alleged is with reference to the date of the contract. No objection to the introduction of the contract in evidence was made and the variance not being of a material character was thereby waived.

The uncertainty in the royalty provision was that the contract called for a royalty of "$20¢" per gallon of mix used in the machine. There was a practical construction of this portion of the contract for a year or two during which royalties were paid by appellant at the rate of twenty cents per gallon of mix. This mutual construction of the agreement in a reasonable manner and favorably to appellant is binding upon him.

Finding no reversible error the judgment of the trial court is affirmed.

Affirmed.