VICTOR PATRIZI V. L. L. McANINCH

No. A-4305. Decided June 16, 1954.
Rehearing overruled July 21, 1954.
(269 S.W. 2d Series 343)

390

*Vinson, Elkins, Weems & Searls, Ben H. Rice III and Ben F. Weems*, of Houston, and *Graves, Dougherty & Greenhill and Joe R. Greenhill*, all of Austin, for petitioners.

Since the contract provision sued upon is void as an illegal attempt to impose the payment of royalties on the use of a chattel after an unqualified sale, and is in violation of the antitrust statutes, and since the legal and illegal portion of the contract are inseparable, the Court of. Civil Appeals erred in failing to hold the entire contract unenforcible. Texas Brewing Co. v. Templeman, 90 Texas 277, 38 S.W. 27; Texas & Pac. Coal Co. v. Lawson, 89 Texas 394, 32 S.W. 871; Segall v. McCall Co., 108 Texas 55, 184 S.W. 188.

*Hart, Brown & Sparks, Powell, Wirtz & Rauhut and William A. Brown*, all of Austin, for respondent.

In reply to petitioner's contentions cited Ford Motor Co. v. State, 142 Texas 5, 175 S.W. 2d 230; Coca Cola Co. v. State, 225

S.W. 791; Pioneer Mutual Compensation Co. v. Diaz, 142 Texas 184, 177 S.W. 2d 202.

MR. JUSTICE CALVERT delivered the opinion of the Court.

Respondent filed suit in a district court of Travis County against petitioner to recover certain royalty payments due under a written contract theretofore entered into whereby the respondent sold to petitioner a certain patented machine for making frozen custard. Petitioner answered, and defended upon the ground, among others, that the contract between the parties was illegal and void because it was in violation of the antitrust statutes of Texas (Arts. 7426, et seq., Vernon's Annotated Civil Statutes of Texas). Trial was to the court without a jury, and at the conclusion of the trial, judgment was entered by the court in favor of respondent, and against the petitioner. On appeal the Court of Civil Appeals entered judgment affirming the trial court's judgment. 258 S.W. 2d 949.

Petitioner assigns error to the holding of the Court of Civil Appeals that petitioner must pay the royalties sued for, on the ground that a substantial portion of the contract is in violation of the antitrust laws; and that the contract is not divisible so as to permit separation of the legal from the illegal provisions. The contract is set out in its entirety, less the signature paragraph, in the opinion of the Court of Civil Appeals. McAninch is designated therein as First Party and Patrizi as Second Party.

The paragraphs pertinent to a decision of this cause are copied below. The contract is on a printed form with blank spaces underlined by dotted lines. These blank spaces are filled in by typewriting and the typewritten words and figures appear over the dotted lines exactly as copied.

"1. That First Party hereby sells and assigns to Second Party Zest-O-Mat machine bearing serial number .... 1003 ....

"2. That First Party agrees for a period of ten (8) years from date, not to sell or lease to any person, firm or corporation other than Second Party, or cause to be used in any other manner whatsoever, any like Zest-O-Mat machine in the above described territory.

"3. That First Party agrees that during the term of this agreement, Second Party shall use the name 'ZESTO' in the advertising and sale of products manufactured in the above mentioned machine, and that Second Party will use only uniformly high quality ingredients, according to the formula approved by the

Taylor Freezer Corporation. Second Party further agrees to use the name 'ZESTO' in the advertising and sale of such products during the term of this agreement.

"4. That in consideration of such sale, Second Party agrees to pay to First Party the sum of . . . . $3,000.00 . . . . Said sum to be paid as follows: _____ cash with order _____ with order, and _____ upon delivery; in addition thereto, Second Party agrees to pay to First Party a royalty of 20c per gallon of mix used in said Zest-O-Mat machine during the 8-year period from _____1st July, 1948_____to 1st July, 1956, . . . * * * Second Party further agrees that in no event shall the royalty paid be less than $500.00 per year, per machine, for each year following its purchase, for the ten-year period and agrees that if the monthly royalty payments for any such year do not total $500.00 or more on each machine, Second Party will, on or before the tenth day of the month immediately following any such year, pay to First Party whatever sum might be necessary to constitute the $500.00 annual minimum royalty for each machine.

"5. That Second Party agrees for a period of ten (8) years from date not to sell, lend, lease or assign said Zest-O-Mat machine bearing serial number . . . . 1003 . . . . to anyone without the written permission or consent of the Taylor Freezer Corporation. Second Party further agrees for a period of ten (8) years from date not to use, operate or cause to be operated in any manner whatsoever said Zest-O-Mat machine bearing serial number . . . . 1003, . . . . at any location other than . . . . 870 South 11th Street in the city of Beaumont, Texas . . . . without the written consent of the Taylor Freezer Corporation.

"12. Both parties hereby expressly agree and contract that it is the intention of neither party to violate public policy, statutory or common laws of the State of Texas, including the Texas Anti-Trust Statute. That if any sentence, paragraph, clause or combination of the same is in violation of the Anti-Trust law or any other Texas, or Federal law, such paragraphs, clauses or sentences, or combination of the same shall be inoperative and the remainder of this contract shall remain binding upon the parties hereto; that in any event, these paragraphs concerning the cash consideration and royalty shall be binding upon the parties, and Second Party shall not be relieved of the obligation to pay for the machine and subsequent royalties as herein provided. It is the intention of all parties hereto to make this contract binding only to the extent that it may be lawfully done under the existing laws of the State of Texas and the United States.

"14. This agreement shall be binding upon and inure to the benefit of the successors and assigns of the First Party and the

heirs, administrators, executors and assigns of the Second Party."

The territory in which First Party agreed not to sell or lease any like Zest-O-Mat machine to any other person, firm or corporation, and outside of which Second Party agreed not to use or operate the machine, was described in the preamble of the contract as "That area within the present City Limits of Beaumont, Texas that is within a one-mile radius of the location known as 870-South 11th, St." The Zest-O-Mat is a patented machine the use of which the patentee could control by lease and for the use of which he could exact royalties, but the parties are agreed that the contract here was a contract of sale and not of lease and that by the sale the patentee's monopoly was exhausted and he no longer had a right to restrict the resale thereof in violation of our antitrust laws.

■ We hold the machine to be an article of merchandise and that the restrictive provisions of paragraphs 2 and 5 are violative of our antitrust laws which prohibit agreements which "may tend to create or carry out restrictions in trade and commerce" and "preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article or commodity." Article 7426, Vernon's Annotated Civil Statutes; National Automatic Machine Co. v. Smith, Tex. Civ. App., 32 S.W. 2d 678, no writ history; Burpee Can Sealer Co. v. Henry McDonnell Co., Tex. Civ. App., 75 S.W. 2d 458, writ refused; Rogers v. Westinghouse Electric Supply Co., Tex. Civ. App., 116 S.W. 2d 886, writ refused; Fuqua v. Pabst Brewing Co., 90 Texas 298, 38 S.W. 29; 6 Texas Law Rev. 210, 35 L.R.A. 241. We do not interpret Coca-Cola Co. v. State, Tex. Civ. App., 225 S.W. 791, as holding to the contrary.

Respondent relies upon the provisions of paragraph 12 of the contract, quoted above, to authorize recovery of the royalties in spite of the illegal provisions. The substance of paragraph 12 is that even if illegal provisions are found in the contract and are stricken therefrom, the royalties provided for in the contract shall yet be payable just as though the illegal provisions had never been in it. In support of their position that the illegal provisions of the contract may be stricken and the remaining provisions thereof preserved, respondent cites Nevels v. Harris, 129 Texas 190, 102 S.W. 2d 1046, 109 A.L.R. 1464, and Ford Motor Co. v. State, 142 Texas 5, 175 S.W. 2d 230.

In Nevels v. Harris, suit on a note and to foreclose a deed of trust given to secure payment thereof was defended on the

ground that the note provided for usurious interest. Under one contingency the note, considered alone, could have been construed as usurious, but the court said that it "must treat the application (for the loan), principal note, interest notes, and deed of trust as constituting one contract," and finding in the deed of trust the stipulation " 'That the intention of the parties being to conform strictly to the Usury Laws now in force, any of said contracts for interest shall be held to be subject to reduction to the amount allowed under the Usury Laws as now or hereafter construed by the courts having jurisdiction,' " held that the contract of the parties, considered as a whole, was not usurious. The court then proceeded in language we regard as particularly applicable to the facts of this case, and said: "Of course we do not mean to hold that a person may exact from a borrower a contract that is usurious under its terms, and then relieve himself of the pains and penalties visited by law upon such an act by merely writing into the contract a disclaimer of any intention to do that which under his contract he has plainly done."

Ford Motor Co. v. State was a suit by the State of Texas to recover statutory penalties and to enjoin violations of the state's antitrust laws. The question before this court was whether the state's petition stated a cause of action. The court held that while none of the provisions of Ford's contract with its dealers violated the antitrust laws, the petition did charge a course of conduct sufficient to raise a jury question of a violation of such laws. One of the provisions of the contract was an agreement by the dealer not to sell Ford's products at less than the retail prices established by Ford " 'in so far as it is lawful for the dealer to so agree * * *.' " (142 Texas 5, 175 S.W. 2d 233.) It was held that this did not constitute an agreement to sell at fixed prices in violation of the antitrust laws.

It will be noted that in each of the cited cases it was held that the language of the contract did not permit any illegality to enter the contract. Not so here. On the very face of the instant contract the illegal provisions of paragraph 2 and 5 were a vital part thereof. It is true that paragraph 12 sought to make them inoperative if they were held to be illegal, but even then the same paragraph sought to retain any benefits that might accrue to First Party if it were held that the royalties were, in part, consideration for the illegal provisions, a matter to which we will next devote our attention. If a party may thus eliminate parts of an agreement which may well have been the vital and inducing cause for its execution by the other party, the while retaining

the right to enforce the consideration for the eliminated parts, the antitrust laws will become a hollow symbol of a dead era.

■ But respondent argues that the royalties are properly severable from the illegal provisions of the contract because they are only a part of the purchase price of the machine. The plain language of the contract contradicts him.

By paragraph 1 respondent sold the machine to petitioner, and the opening sentence of paragraph 4 states in language plain and clear "That in consideration of such sale, Second Party agrees to pay to First Party the sum of $3,000.00." There the sentence ends; it is ended with a period. That is all of the consideration for the sale of the machine. It does not say that in consideration of such sale second party agrees to pay $3,000.00 and certain royalties; it just says that second party agrees to pay $3,000.00 for the machine. The printed form is prepared so that the parties may then fill in their agreement as to how "said sum" (the consideration for the sale of the machine) is to be paid, whether all in cash with the order, or partly in cash with the order and partly upon delivery. Here, the contract was filled in to show that all of the consideration for the machine was paid in cash with the order. There then follows the provision that "in addition" Second Party agrees to pay First Party a 20c per gallon "royalty" for a period of eight years, with a minimum payment of $500.00 for each of the years. "In addition" to what? The contract says the royalty payment is "in addition" to the "consideration of such sale" which is recited to be "$3000.00 cash with order." From the very language of these two sentences it would seem clear that the parties expressed the intention that the $3,000.00 cash payment should be the entire consideration for the sale of the machine. That such was their intention is clearly expressed again in the very plain language of paragraph 12 wherein they provided "that in any event, these paragraphs concerning the cash consideration *and* royalty shall be binding upon the parties, and Second Party shall not be relieved of the obligation to pay for the machine *and subsequent royalties* as herein provided."

In our view there is no need for the use of rules of construction to arrive at the intention of the parties, but if we were to adopt the view of respondent that the royalties were a part of the consideration for the sale of the machine it would lead to the rather unusual result that the same machine would be sold to one party, selling but little of the product and therefore requiring the use of but little mix, for the minimum price of $7,000.00,

whereas to one selling a large amount of the product and therefore requiring the use of, let us say, 5,000 gallons of mix per year, the sale price of the machine would be $11,000.00.

If the machine itself was not the consideration of the agreement to pay royalties, then the only consideration for such agreement was the right to use the trade-name "Zesto" given in paragraph 3 of the contract and the agreement of respondent not to sell or lease a like machine in the restricted territory. These are the only undertakings of the respondent found in the contract. Respondent suggests, therefore, that the function of paragraph 12 is to allocate the royalty payments as consideration for the right to use the trade-name, a legal provision of the contract, rather than as consideration for a restricted territory, an illegal provision. Respondent concedes in his brief that "if any illegal provision is part of the contract and part of the consideration for petitioner's promise to pay 'royalties,' then the illegality of part of the consideration rendered the entire contract illegal."

It is our opinion that under the only reasonable construction of all the provisions of the contract, the royalty payments and the illegal restrictions contained in paragraphs 2 and 5 are so interdependent and indivisible that they cannot be separated and must fall together.

The record shows that there was no secret formula for making "Zesto"; that it was but a trade-name applied to a powdered mix used in the making of a frozen custard, available to anyone who cared to buy it. On the other hand, by obtaining a restricted territory in which no like machine could be sold or leased, petitioner freed himself of all competition. We are not prepared to say that petitioner would have agreed to pay the royalties for use of the trade-name if the illegal provisions for a restricted territory had been eliminated. Kissel Motor Co. v. Walker, (5th Cir.) ; 270 Fed. 492, 24 A.L.R. 782. It is worth noting that the agreement of respondent not to sell or lease a like machine in the restricted territory was to continue for eight years, the agreement of petitioner not to sell, lend, lease or assign the particular machine or to operate it outside of the restricted territory was to continue for eight years, and the agreement to pay royalties was to continue for eight years.

3 . Having reached the conclusion that the provision for royalty payments and the illegal provisions are indivisible and inseparable, we are confronted with the oft-repeated rule: "That a prom-

ise made upon several considerations, one of which is unlawful, no matter whether the illegality be at common law or by statute, is void." Edwards County v. Jennings, 89 Texas 618, 35 S.W. 1053, 1054; W. T. Raleigh Co. v. Land, 115 Texas 319, 279 S.W. 810. We may say here as was said by the court in Wegner Bros. v. Biering & Co., 65 Texas 506, 509, 510, 512:

"It is obvious that there is ample valid consideration to support the promise sued on; yet, if, to the abundance of valid consideration, there has been added a leaven of what is illegal, the whole contract is tainted.

"* * * The whole cannot be enforced, because the law will not compel what it prohibits, and the parts can not be separated. Illegality thus vitiates the entire instrument.

"* * * The purpose of the law is to discountenance and discourage improper contracts; not to enforce them is adopted as the best means to this end, and is adopted in total disregard of the effect upon the parties to the prohibited transaction."

The judgments of both courts below are reversed and judgment is here rendered that plaintiff take nothing.

Opinion delivered June 16, 1954.

Associate Justice Smedley not sitting.

MR. JUSTICE WILSON concurring.

The majority opinion is based in part upon Ford Motor Co. v. State, 142 Texas 5, 175 S.W. 2d 230. Art. 7437, V.|A.C.S., is not ambiguous and needs no construction. Our duty is to apply the statute.

The holding here is that a contract containing some clauses violating the antitrust laws and also containing a "saving clause" that the parties do not intend to violate the antitrust laws is not "absolutely void" and therefore "not enforcible, either in law or equity," but on the contrary the portions violating the antitrust laws may be stricken and the remainder of the contract enforced if severable. In my opinion, this holding is contrary to Art. 7437, V.A.C.S., which is:

"Any contract or agreement in violation of any provision of this subdivision shall be absolutely void and not enforcible either in law or equity."

Through Art. 7437 the Legislature clearly attempted to impose as a civil sanction for the purpose of aiding in the enforcement of the antitrust laws the penalty of contractual illegality or contractual unenforceability. The parties may sidestep neatly Art. 7437 in making a contract violating the antitrust laws by the statement that it is the "intention of neither party to violate * * * the Texas Antitrust Statute." Of course his self-serving statement about intent is not a correct statement of fact. The parties knew the specific wording of the contract and intended to use the very words they did use. If a particular combination of words constitutes an antitrust violation, they intended to violate the antitrust law. In law a person intends to do the very act he does do although he may not fully understand or desire the specific legal consequences which follow his acts. So in the case of W. T. Raleigh Co. v. Land, 115 Texas 319, 279 S.W. 812, the court said:

"* * * The proviso, of course, is without meaning except as a self-serving declaration of intent whose prima facie evidential value, if any, is * * * wholly destroyed (or rather turned against the parties) if in fact a bad purpose appears in the execution of the agreement. * * *"

I would give no effect at all to the statement that the parties had no intent to violate the law if what they did does in fact violate the law.

The Ford case was not a suit to declare the contract void and unenforceable under Art. 7437 and no one attempted to invoke civil sanctions voiding the Ford contract. Perhaps that is the reason the Court in that case did not either mention or discuss Art. 7437.

It may be that consistency prohibits that the same contract should be held subject to civil penalties but not to criminal penalties. Since the Court in the Ford case did not directly construe or apply Art. 7437, as we must in the case at bar, we should disregard paragraph 12 of the contract because it directly conflicts with a statute and reserve a reconsideration of the Ford case until the point is again squarely presented in a penalty suit.

Opinion delivered June 16, 1954.

MR. JUSTICE GRIFFIN, joined by JUSTICE GARWOOD, dissenting.

I find myself unable to agree with the majority opinion wherein it holds (1) the provisions of the sale contract which violate the antitrust statutes are not severable and divisible from the legal provisions so as to leave a legal and valid obligation to pay the royalties sued for, and (2) the royalties provided are not a part of the purchase price to be paid for the machine.

The provision of Paragraph 4 for the payment of $3,000.00 cash "and in addition thereto" the royalties provided for, does not prevent the royalties being a part of the purchase price. It is no more than a deed to a tract of land which says the consideration for the sale is $3,000.00 cash, and in addition thereto certain vendor's lien notes. The words "said sum to be paid as follows" in no manner limit the consideration to be paid to the amount of cash. "Said sum" clearly means only the amount of cash to be paid, not the total consideration. The fact that a period follows the words "the sum of $3,000.00" could have no more effect in determining the consideration than if it had been a comma, semicolon or other punctuation mark. 10 Tex. Jur. 300, *Contracts*, Sec. 174. When the whole of the paragraph is considered it is very apparent to me that it states consideration to be paid for the machine. Assuming, without deciding the same, that other provisions of the contract violate the antitrust statutes, the question then arises as to whether the legal provisions of the contract are divisible or severable from the illegal provisions so that a valid, binding and legal contract was made by the parties which can be enforced without resort to the other provisions of the contract. 10 Tex. Jur. 246, et seq., *Contracts*, Sec. 141; *Id.*, 316, Sec. 182; 27 Texas Law Rev. 254; Corbin, *On Contracts*, Sec. 1520.

It is elementary and requires no citation of authorities for the proposition that the contract must be construed in its entirety, and effect given to all its provisions. Paragraph 12 provides that neither party intends to violate public policy, statutory or common laws or the Texas Anti-Trust Statutes. Then there is a provision that if any part of the contract or any combination of parts is in violation of Federal law, or Texas law, including the Anti-Trust Act, such parts, or combinations of parts, shall be inoperative, and the remainder of the contract shall continue to be binding upon the parties, and states that Second Party must pay for the machine, both cash consideration and royalties as is provided in the contract. (Paragraph 4.) Does Paragraph 12 mean what it says, and is such provision unlawful and of no force and effect?

In the case of Wicks v. Comves, et al, **110 Texas 532, 221** S.W. 938, Comves sued Wicks, et al, for specific performance of a lease contract, or for damages for breach of such contract. The contract provided that Wicks leased space to Comves for a fruit stand on the sidewalk in the City of Houston at a specified monthly rental. The contract further provided that if the City complained of such fruit stand on the sidewalk, or if there was a city ordinance "now or hereafter in force" making a fruit stand on the sidewalk illegal, then Wicks agreed to furnish Comves the same amount of space inside Wicks' building, which was at the same location, for his fruit stand. Wicks, et al defended the suit upon the ground that the contract was illegal and void because of leasing space on the sidewalk, and that the provision for the inside lease was inseverable from the sidewalk lease provision. There was a city ordinance prohibiting the occupation of any city sidewalk for mercantile purposes at the time of the execution of the contract. On certified question, Judge Greenwood, speaking for this Court, held the inside lease was severable from the sidewalk lease, and stated: "* * * we think the parties have made their purpose entirely plain that the failure of the grant, if any, of the use of the stands and fixtures on the sidewalk was not to affect the grant, for the agreed rental, of the inside space. (Only one rental charge was provided in the contract, and it was stated in connection with the sidewalk lease.) How can parties more plainly direct a severance of obligations than by stipulating that one shall be performed, for a separate consideration, upon the failure of another?" (110 Texas 535) 2nd. col., 221 S.W., p. 939. The Court discusses the law applicable to severable valid provisions contained with illegal provisions in the same contract, and holds that part of the lease contract for the inside space valid, binding and enforceable. In the contract under consideration in this cause, the parties have made a specific provision as to payment for the machine, in event any part of the contract should be held illegal and void.

In the case of Nevels, et al v. Harris, 129 Texas 190, 102 S.W. 2d 1046, 109 A.L.R. 1464, Harris sued Nevels, et al to recover on a note and to foreclose a deed of trust on real estate given as security for the note. The defense was usury, in that a part of the interest on the main debt was represented by interest coupon notes with definite due dates, and also these notes and deed of trust contained a provision to the effect that if default were made in the payment of the obligation, all notes immediately became due at the option of the holder. Also, a sum of money was deducted from the original amount of the loan and paid to a broker agent of Harris, so that the borrower, Nevels, did not re-

ceive the amount of money set out in the face of the principal note. Under certain conditions, this permitted Harris to collect more than 10% interest per annum on the amount of money actually paid over to Nevels as proceeds from the loan. The case of Shropshire v. Commerce Farm Credit Co., 120 Texas 400, 30 S.W. 2d 282, 39 S.W. 2d 11, 84 A.L.R. 1269, had held contracts of this nature in violation of the Texas statutes defining usury. However, the deed of trust in the Nevels case contained this further provision: " 'That the intention of the parties being to conform strictly to the Usury Laws now in force, any of said contracts for interest shall be held to be subject to reduction to the amount allowed under said Usury Laws as now or hereafter construed by the courts having jurisdiction.' " (129 Texas 197.) Bot. 2nd. col., 102 S.W. 2d, p. 1049. In affirming the judgments of the courts below, and discussing the clause last above quoted this Court said:

"It is the rule that all parts of a contract must be given effect if it is reasonably possible to do so. It is also the rule that men are presumed to have intended to obey the law unless the contrary appears. In the contract at bar the lender very carefully provided for the cancellation of unearned interest notes should be the default maturity provisions of the contract be exercised. The parties were not even content to rest the matter of usury there. They added the provision last above quoted. If this provision only has effect to cancel unearned interest coupons from the date the default maturity provisions of the contract are exercised by the noteholder, it is a vain and an idle stipulation, for the reason that that matter had already been carefully guarded by the other provisions of this contract which we have quoted and discussed. If this last provision can be given effect, and, as already said, it must be given some effect if it is reasonably possible to do so, it must be held to operate to deny the noteholder the right, in any event, to collect usury. In other words, it denies the noteholder the right to collect more than the principal debt and 10 per cent. interest per annum from the time the borrower had the use of the money until he should repay it. This is plain because this clause of the contract expressly states that it is the intention of the parties to conform strictly to the usury laws now in force, and that 'any of said contracts for interest shall be held to be subject to *reduction* to the amount allowed under said usury laws,' etc."

I can see no distinction in principle between the so-called "saving clause" in the usury case and in the case at bar, except

the clause in the case at bar specifically reiterates the liability of petitioner for the cash consideration and royalties to be paid for the Zest-O-Mat machine, in the event any part of the purchase contract should violate the Anti-Trust or other laws.

In the case of Ford Motor Co. v. State, 142 Texas 5, 175 S.W. 2d 231, the State sued Ford for violation of the Anti-Trust laws of Texas on allegations that the contract which Ford had with its dealers in Texas was illegal and void. The trial court sustained Ford's exceptions to the State's petition, and the cause was dismissed. On appeal, the Court of Civil Appeals reversed and remanded for a trial upon the merits. In affirming the judgment of the Court of Civil Appeals, this Court said: (142 Texas 8, 175 S.W. 2d 233)

"A contract which merely agrees to do a certain thing 'in so far as it is lawful for the dealer to so agree * * *' on its face constitutes no agreement to do the thing mentioned, if it is unlawful to do so. Nevels v. Harris, 129 Texas 190, 102 S.W. 2d 1046, 109 A.L.R. 1464."

As pertinent to this cause the Court further says:

"The State contends that Section 9 (b) of this alleged contract on its face violates our anti-trust laws, because it obligates Ford Dealers not to sell Ford products at less than retail prices established by Ford for the dealer's city or town from time to time. This section of the contract reads as follows: '(b) Insofar as it is lawful for Dealer so to agree, not to resell Company products bearing Company's trademark or trade name at less than retail prices established for Dealer's city or town from time to time by Company, except in cases where such goods have been damaged, or have become obsolete, or are about to become obsolete, because of change in models, or in the case of sales to Company or its nominees or to other authorized Ford Dealers, or Associate Ford Dealers, and except when a discount is warranted by quantity purchases unless such a discount is in violation of law. Dealer agrees, if requested by Company, to display prominently in Dealer's showroom a chart showing current minimum retail prices as established by Company for Dealer's City or Town.'

"Under the rule of law already announced in this opinion, this contract provision, on its face, does not violate our anti-trust laws. It only obligates the dealer if it is lawful for him to be obligated. If it is unlawful, no obligation is assumed. If no obligation is assumed, no violation of law is contracted for."

The Court also discusses and upholds contract provisions for supervision of the place of business, accounting methods and conduct of the dealer's business, somewhat comparably to provisions in the contract under discussion.

Respondent contends that under the provisions of Art. 7437, Vernon's Annotated Civil Statutes, "any contract or agreement in violation of any provision of this subdivision shall be absolutely void and not enforcible either in law or equity." This statute was the same when all three of the cases above cited were decided. Also, the wording of the Usury Statute (Art. 5071, Vernon's Annotated Civil Statutes) which was in effect when the Nevels case, supra, was decided by this Court, is, in part: "* * * and all written contracts whatsoever, which may in any way, directly or indirectly, provide for a greater rate of interest (than legal rate of 10%) shall be void and of no effect for the amount or value of the interest only * * *." In the face of this statute this Court, in the Nevels case, approved the collection of all interest not above the legal rate. In the case at bar, we have a valid and legal provision as to the payment of the purchase price for the Zest-O-Mat machine contained in a separate paragraph to those violating the Anti-Trust Act, and so being severable, may be enforced.

In view of the above authorities, I believe that Paragraph 12 is a valid, binding and severable part of the contract for the purchase of the machine between the parties hereto.

Petitioner cites no case holding that a payment of a royalty as a part of the purchase price for the machine is illegal or unlawful, nor does he make any such contention. I do not believe that it is a violation of law to agree to purchase any machine by making a cash down-payment, and to pay out the balance at an agreed figure per unit produced or manufactured in such machine for a definite time. This is the effect of the consideration agreed to be paid in Paragraph 4, with the addition of a guaranteed minimum payment of $500.00 per year for a definite 8-year period. Petitioner contends that the royalty provisions violate the antitrust statute in that they are an attempt to exercise control over the machine after it has been bought and paid for, thus constituting a servitude and restraint upon the use and alienation of the machine. I do not so construe the contract. As I have said above, the provision for "royalty" payment is a part of the purchase price to be paid for the machine, and constitutes a personal obligation of the Second Party. No lien on the machine

is reserved, nor attempted to be reserved by First Party. First Party admits that the title to the machine passed to the Second Party purchaser.

It follows that I would affirm the judgments of both courts below.

Opinion delivered June 16, 1954.

Rehearing overruled July 21, 1954.